## BESSONIES v. THE CITY OF INDIANAPOLIS.

No. 8561.

CITY.—*Common Council.*—*Power of, by Ordinance, to License Private Hospitals.*—*Meaning of "Hospitals" in Statute for Incorporation of Cities.*— Clause 33 of section 53 of the general law of March 14th, 1867, for the incorporation of cities, 1 R. S. 1876, p. 292, authorizes the common councils of cities incorporated under such law "to enforce ordinances  *  * to erect and establish market-houses, market-places, engine-houses, houses of refuge, pest-houses and *hospitals*."

*Held,* that there is nothing in this clause, nor in any other part of such statute, authorizing common councils of cities to enact ordinances to license and regulate the establishment of *private* hospitals erected within the city limits; the word "hospitals," in such clause, meaning only *public* hospitals.

SAME.—The general power conferred on common councils by section 56 of such statute, "to make other by laws and ordinances not inconsistent with the laws of this State and necessary to carry out the objects of the corporation," authorizes the enactment of such by-laws and ordinances only as are necessary to the complete exercise of the corporate powers expressly or impliedly granted to cities thereby.

HOSPITAL.—*Not Nuisance per se.*—A hospital is not *prima facie* or *per se* a nuisance.

From the Marion Superior Court.

*N. B. Taylor, F. Rand* and *E. Taylor,* for appellant.

*C. L. Holstein, W. H. Martz* and *J. A. Henry*, for appellee.

Howk, J.—This suit was commenced by the appellee, against the appellant, on the 24th day of September, 1879, before the mayor of said city of Indianapolis, to collect a penalty for an alleged violation by the appellant of certain sections of a certain city ordinance. On the trial of the cause before the mayor, the appellant was adjudged to be guilty of the offence charged, and to pay a certain penalty, from which judgment he appealed to the court below.

In this latter court, at special term, the appellant's demurrer to appellee's complaint having been overruled, and his exception saved to this ruling, he answered in two special or affirmative paragraphs; to each of which the appellee's demurrers, for the want of sufficient facts therein, were sustained by the court, and to these decisions the appellant excepted. He declined to amend or answer further; and thereupon the court at special term ordered and adjudged, that he pay the appellee the sum of $100 and the costs of suit. On appeal to the general term, the judgment of the court at special term was affirmed; and from the judgment of affirmance this appeal is now here prosecuted.

The appellant has, by a proper assignment of error, brought before this court the errors assigned by him in the court below, in general term, as follows:

1. That the court at special term erred in overruling his demurrer to the complaint;

2. That the court at special term erred in sustaining the appellee's demurrer to the first paragraph of his answer ;

3. That the court at special term erred in sustaining the appellee's demurrer to the second paragraph of his answer; and,

4. That the court at special term erred in rendering judgment against him for the appellee.

1. In its complaint, the appellee alleged, in substance, that the appellant, on the 18th day of September, 1879, at the city of Indianapolis, in Marion county, did then and there violate sections one and four of an ordinance of said city, passed by its common council and board of aldermen on the 29th day of July, 1879, by unlawfully establishing, maintaining, operating and conducting a hospital, within the corporate limits of said city, called and known as the ' St. Joseph's Home for the Sick,' situated and being on the south-east quarter of that portion of out-lot number fifty-two in said city, bounded as follows, to wit : On the west by East street, on the north by Michigan street, on the east by Liberty street, and on the south by Vermont street; he, the appellant, not then and there having first obtained a license and permit therefor from the common council and board of aldermen of said city of Indianapolis, as required by said ordinance. Wherefore the appellee demanded judgment for one hundred dollars.

A copy of the ordinance mentioned in said complaint was therewith filed, which we will set out in this connection, as follows:

" An ordinance to regulate the establishment, maintenance and operation of hospitals, within the city of Indianapolis.

" *Section* 1. Be it ordained by the common council and board of aldermen of the city of Indianapolis, that, from and after the passage of this ordinance, it shall be unlawful for any person or persons, or body corporate whatever, to establish, maintain, operate or conduct any hospital, within the corporate limits of the city of Indianapolis, without first having obtained a license or permit therefor from the said common council and board

of aldermen of the city of Indianapolis, and complied with the provisions hereinafter stated.

" *Section* 2. That any person or persons, or body corporate, contemplating or desiring to establish, maintain, operate or conduct a hospital, in the said city of Indianapolis, from and after the passage of this ordinance, shall file a written application for such license or permit, at least two (2) weeks before the next meeting of the said common council and board of aldermen of the city of Indianapolis, at which time the said application shall be considered as filed with the city clerk, and shall also, at the same time, give public notice of such application in some newspaper of general circulation, within said city; which said application shall state the name of such applicant, the character of the hospital proposed, and the location thereof.

" *Section* 3. This ordinance shall apply alike to all hospitals already established, as well as to hospitals hereafter to be established.

" *Section* 4. That any person or persons, or body corporate, offending against any of the provisions of this ordinance, shall, for each violation (and each and every day the same is continued shall be a separate offence), upon conviction before the mayor of the said city of Indianapolis, be fined in the sum of one hundred dollars ($100.00) and the costs of prosecution.

" *Section* 5. This ordinance shall take effect and be in force from and after its publication in the Indianapolis Republican."

The important and controlling questions in this case arise, we think, under the alleged error of the court at special term, in overruling the appellant's demurrer to appellee's complaint, upon the ground that it did not state facts sufficient to constitute a cause of action. Other grounds of objection to the complaint were assigned in the

demurrer thereto, but they are unimportant and will not be further noticed in this opinion.

The questions presented for decision, by the demurrer for the want of sufficient facts to the appellee's complaint, in this case, may be thus stated:

What powers have the legislative bodies of the city of Indianapolis, under the statutes of this State, over the establishment, maintenance and operation of private hospitals within the corporate limits of said city? Can the ordinance in suit, and above set out, be regarded as a proper and authorized exercise, by such legislative bodies, of the powers conferred upon the city of Indianapolis, by the statutes of this State, over the establishment, maintenance and operation of hospitals within the city limits?

In the consideration of these questions, we shall assume, as the record shows nothing to the contrary, that the appellee, the City of Indianapolis, was and is incorporated under the general law for the incorporation of cities. *Lowrey* v. *The City of Delphi*, 55 Ind. 250.

The word "hospital," so far as we can find, is used but once in the general law for the incorporation of cities. Thus, in section 53 of the act of March 14th, 1867, which is now the general law of this State for the incorporation of cities, it is provided, that "The common council shall have the power to enforce ordinances:     *     *     *     *

"*Thirty-Third.* To erect and establish market-houses and market-places, engine-houses, houses of refuge, pest-houses and hospitals." 1 R. S. 1876, pp. 288, 292; Acts 1867, pp. 53, 57. We are clearly of the opinion, that this statutory provision afforded the common council and aldermen of the city of Indianapolis no power or authority whatsoever to enact and enforce such an ordinance as the one now under consideration. From the language used in the above quoted clause of said section 53 of the statute, and from the association therein of "hospitals" with other

houses necessarily public in their nature, it is manifest, we think, that the Legislature merely intended thereby, that the common council of a city incorporated under the general law should have the power to provide by ordinance for the erection and establishment of a public hospital, by such city and within its corporate limits. This statutory provision, as we understand its object, meaning and purpose, has no reference to or connection with private hospitals, or asylums or homes for the sick, either charitable or otherwise, which have been or may be erected or established within the limits of such a city, by any person, church, society or voluntary association.

The appellee's learned counsel have referred us to a number of the other clauses or sub-sections of said section 53, in which certain specific powers are conferred upon the legislative authorities of cities incorporated under the general law, in regard to other matters than hospitals. We need not, however, set out or consider any of these other clauses or sub-sections; for, whatever else might be said of them, it is very certain that it can not be said, that any of them authorized or empowered the legislative bodies of the city of Indianapolis to adopt or enforce an ordinance in regard to hospitals. Nor have we been able to find, in the general law for the incorporation of cities, any section, clause or sub-section, which, by its terms or even by implication, would authorize or empower the legislative bodies of Indianapolis to pass or enforce the particular ordinance, in relation to hospitals, now under consideration.

In section 56 of the aforesaid act of March 14th, 1867, it is provided, that "The common council shall have power to make other by-laws and ordinances not inconsistent with the laws of this State and necessary to carry out the objects of the corporation." By this general grant of power, it seems to us that nothing more was meant or

intended by the Legislature than to authorize and empower the common council to make such other by-laws and ordinances, consistent with the laws of the State, as might be necessary to carry out fully, and to secure the complete exercise of, all the corporate powers expressly or impliedly granted to the city. It is certain, we think, that the cities of this State, incorporated under the general law for that purpose, have no express power, nor have they any power necessarily implied, over the private hospitals that have been or may be located within the city limits. The ordinance in suit can not be upheld, as it seems to us, under the police powers of the city of Indianapolis. Under its police powers, the city, by its lawmaking authorities, might, perhaps, prescribe reasonable rules and regulations for the drainage of the hospital grounds, the purification and proper ventilation of the buildings, for the removal therefrom of any person afflicted with infectious or contagious disease, and for the general management and government of the hospital grounds and buildings, both internally and with relation to the adjacent and surrounding property; and such reasonable rules and regulations may doubtless be enforced by proper penalties.

Hospitals and homes for the sick are very far from being nuisances *per se.* They are wise and beneficent charities, to be fostered and encouraged by liberal legislation, and not to be suppressed or even discouraged by what may seem to be harsh or restrictive laws. We do not think that the ordinance under consideration can be regarded as a proper exercise or application of the implied police powers of the city, either in its terms or in its object; and certainly it was not authorized by any of the express powers of the city, under the law. We are of the opinion, therefore, that the legislative bodies of the city of Indianapolis clearly transcended their powers, express

and implied, under the law, in the passage or enactment of the ordinance in suit in this case, and set out in this opinion; that said ordinance was and is absolutely null and void; and that, for this reason, the appellant's demurrer to the appellee's complaint, for the want of sufficient facts therein, ought to have been sustained by the court.

Our conclusion, in regard to the insufficiency of the appellee's cause of action, renders it wholly unnecessary for us to consider or decide any of the questions arising under the other errors complained of in this cause. Much learning and industry have been displayed by the learned counsel of the respective parties, in the presentation and discussion of the questions for decision, in their able and exhaustive briefs of this cause, and it is due to them, and a pleasure to us, to recognize and acknowledge in this manner our obligations for the invaluable assistance they have given us.

The judgment is reversed, at the costs of the appellee, and the cause is remanded with instructions to sustain the demurrer to the complaint.

### ON PETITION FOR A REHEARING.

WORDEN, J.—In this case a petition for a rehearing has been filed, in which the question involved has been elaborately and exhaustively argued. On the argument, and on further consideration of the question, we are clearly satisfied that the decision heretofore pronounced is correct. The ordinance in question can not be upheld.

A hospital is not *prima facie* or *per se* a nuisance, though it might under some circumstances become such.

The ordinance is not based upon the theory that a hospital is necessarily a nuisance, for it is hardly to be supposed that the common council and board of aldermen contemplated the licensing of a nuisance. Nor

does the ordinance contemplate the entire prohibition of hospitals within the city, inasmuch as it provides for licensing them. And this is the view of counsel for the appellee; for they say in their written "suggestions," filed on the argument of the petition, "there is no prohibition contained within the ordinance in question. It simply regulates the establishment, and does not in any sense prohibit."

But does the ordinance regulate such establishments? Clearly not. From the beginning to the end of it there is no such regulation provided for.

The first section makes it unlawful for any one to establish, maintain, operate or conduct any hospital within the city, without a license or permit from the common council and board of aldermen. The second provides for the manner of obtaining the license, viz., by filing a written application therefor, stating the character and location of the proposed hospital, and giving the notice provided for. No license fee is required, and the ordinance was not intended as a revenue measure. The third makes the ordinance applicable alike to hospitals then established and those that might be thereafter established. The fourth provides a penalty for a violation of the ordinance; and the fifth and last section provides for the taking effect of the ordinance from and after its publication.

An analysis of the ordinance shows that no attempt was made therein to regulate hospitals, either as to their location or manner of being conducted.

Without any provision as to the location or management of hospitals, the ordinance attempts to make it unlawful for any one to establish or conduct one without a license or permit from the common council and board of aldermen; and the granting or refusal of the license or permit is not governed by any prescribed rules, but rests, in such case,

in the uncontrolled discretion of the common council and board of aldermen.

It is apparent, that, under the ordinance, if valid, the common council and board of aldermen have the power, to grant or refuse the license in any given case, at their mere pleasure; and that no one can conduct or maintain a hospital within the city, however harmless or beneficial it might be, except by the consent of the common council and board of aldermen.

It is not necessary to suppose that the common council and board of aldermen would abuse the power thus assumed by them, to grant or refuse the license, as they might think proper, or that they would exercise it otherwise than as they might think for the public good. It is sufficient to say, that, if the ordinance is valid, the common council and board of aldermen have it in their power to grant one person a license, and refuse another, under the same circumstances. No law could be valid, which, by its terms, would authorize the passage of such an ordinance. The 23d section of the Bill of Rights provides, that " The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." What the Legislature can not do directly in this respect, it can not authorize a municipal corporation to do.

The petition for a rehearing is overruled.

NOTE.—ELLIOTT, J., did not participate in the decision of this cause.