## Commonwealth *v.* Charity Hospital of Pittsburg.

*Nuisance—Public health—Hospitals—Act of April* 20, 1899, *P. L.* 66.

In the act of April 20, 1899, which for the protection of the public health prohibits the establishment or maintenance of additional hospitals, pest houses, and burial grounds in the built up portions of cities, the words "built up portions of cities" must be understood in their ordinary and popular meaning and with reference to the object of the act, viz: the protection of public health. The words do not necessarily exclude a portion of a city classified as "rural" for purposes of taxation.

A hospital building proposed to be erected by the owners of a hospital in a different portion of a city from that in which the original hospital is located, is an "additional hospital" within the meaning of the act of April 20, 1899.

*Constitutional law—Title of statute—Act of April* 20, 1899, *P. L.* 66.

The act of April 20, 1899, entitled "An act for the protection of the public health, prohibiting hereafter the establishing or maintenance of additional hospitals, pest houses and burial grounds in the built up portions of cities," does not violate article 3, section 3 of the constitution of Pennsylvania which provides that no bill shall be passed containing more than one subject, which shall be clearly expressed in its title.

*Constitutional law—Local or special law—Hospitals—Act of April* 20, 1899.

The act of April 20, 1899, does not violate article 3, section 7 of the constitution of Pennsylvania which prohibits the general assembly from passing any local or special law "regulating the affairs of counties, cities," etc.

*Constitutional law—Constitution of the United States, Fourteenth Amendment—Act of April* 20, 1899.

The act of April 20, 1899, does not violate the fourteenth amendment of the constitution of the United States relating to the protection of property.

*Nuisance—Public nuisance—Attorney general—Damages.*

A court of equity has jurisdiction of a suit instituted by the attorney general to prevent the construction of a hospital prohibited by the act of April 20, 1899. In such a suit the question of damages will not be considered.

Argued Oct. 29, 1900. Appeal, No. 144, Oct. T., 1900, by defendant, from decree of C. P. No. 2, Allegheny Co., April T., 1900, No. 360, on bill in equity in case of Commonwealth of Pennsylvania ex rel. John P. Elkin, Attorney General, v. Char-

ity Hospital of Pittsburg.   Before McCollum, C. J., Mitchell, Fell, Brown and Mestrezat, JJ.   Affirmed.

Bill in equity to restrain the erection of a hospital.

Shafer, J., filed the following opinion :

The bill is by the commonwealth of Pennsylvania, at the relation of the attorney general, to enjoin the erection of a proposed hospital in the nineteenth ward of the city of Pittsburg.

### FINDINGS OF FACT.

1. The defendant is a corporation of the state of Pennsylvania, chartered January 5, 1898, under the provisions of the act of 1874, for the purpose of erecting, maintaining and operating a general hospital; and it had, in fact, before its incorporation, erected a hospital from about February, 1897, in the city of Pittsburg.

2. The building used by the hospital at present is situated on Collins avenue, in the city of Pittsburg, contains twenty-two rooms, and is now and for some time has been in charge of the Sisters of Charity.   It is supported by voluntary contributions and the funds received from pay patients.   Since the Sisters of Charity have taken charge of it there have been treated 567 pay patients and thirty-five charity patients.   The building at present occupied is entirely inadequate in size to accommodate the hospital, and the defendant has been compelled to refuse admission to a large number of persons, the number refused from January 1, 1900, to July 1, 1900, being 149.

3. The hospital conducted by the defendant is a general one, but persons suffering from contagious diseases are not knowingly received, and none such has been treated in the hospital up to the present time, unless it be one case of tuberculosis.

4. In April, 1899, the defendant purchased a block of property in the nineteenth ward of the city of Pittsburg, bounded by Wellesley avenue, St. Clair street, Hampton street and Mellon street, and being divided into two parts by Wellston alley, running from St. Clair street to Mellon street.   The consideration paid by the defendant for the property was $50,000.

5. The defendant proposes to build on the property in question, beginning at present at Hampton and St. Clair streets, a hospital building, which is to cost about $150,000, and to be

built in accordance with the most modern and approved methods of building hospitals.

6. The nineteenth ward lies in what is called the East End of the city of Pittsburg, north of East Liberty, extending from Penn avenue to the Allegheny river, and includes the Highland park. The two main thoroughfares of the ward are North Negley avenue and North Highland avenue, which lie about five squares apart, each being traversed by street car lines. The land of the defendant, above described, lies between these two avenues, two squares from each of them. The square immediately north of the proposed hospital site is occupied by one of the public schools of the city of Pittsburg, known as the Fulton school, which now has a building in use accommodating about 450 pupils, and has in process of erection an addition, duplicating the present building, rendered necessary by the increasing population of the neighborhood. The school building faces on Hampton street and stands back from it about fifty feet, and will be distant about 130 feet from the proposed hospital building. On the west of the proposed site there are no buildings in the two squares which extend to North Negley avenue except one frame dwelling house. On the south of the proposed site, beginning at Wellesley avenue and extending southward from Wellesley avenue, between North Negley and North Highland avenue, practically the whole of the ground is occupied by buildings, principally residences, and this condition of affairs extends continuously between the two avenues, all the way to Penn avenue, a distance of about 4,000 feet, with the exception of some of the squares between Hays and Black streets, about one half the distance to Penn avenue. On the east side of the proposed site, on the square next to Wellesley avenue, at the time of the purchase by the defendant, there existed but one house. Several others have since been constructed or are in process of construction, covering the most of the square south of Wellston alley. East of the hospital site and north of Wellston alley is occupied by a private residence and the grounds connected therewith.

7. The proposed location has not been approved by the mayor of the city of Pittsburg, a city of the second class, the director of public charity or the director of public works, or by any of them.

8. In the classification of real estate in the city of Pittsburg for the purposes of taxation, the whole district in which the hospital site is located is classified as rural property and pays taxes on that basis.

9. The testimony of the mother superior of the Sisters of Charity is to the effect that it is the intention of the defendant to remove its hospital from Collins avenue to the proposed building when erected, and thereupon to discontinue the hospital at Collins avenue, but no corporate action to that effect was ever taken.

The case of the plaintiff for an injunction rests upon the provisions of two acts of assembly—that of June 10, 1897, P. L. 138, which provides that no cemetery, hospital or pest house shall be constructed in any city of the second class until its location shall have been approved by the mayor, the director of public charity and the director of public works, or a majority of them; and the Act of April 20, 1899, P. L. 66, which, for the protection of the public health, prohibits the establishing or maintenance of additional hospitals, pest houses and burial grounds in the built up portions of cities. The defendant claims that the second of these acts does not apply to this case, and that, in any event, both of the acts are unconstitutional and void.

### CONCLUSIONS OF LAW.

I. Considering, first, the act of 1899, the first question to be resolved is whether or not the proposed site of the hospital, as hereinbefore described, is a built up portion of the city of Pittsburg within the meaning of the act. The defendant urges the proposition that because, by the Act of May 5, 1876, P. L. 124, governing assessments for the purposes of taxation in cities of the second class, the term "built up" is used in contradistinction to rural and agricultural property, and the district in question has always been assessed as rural, and not built up property, under the terms of that act, the legislature must be presumed, in the present act, to have used the term "built up" in the same sense which it has been held to have in the act of 1876 and similar acts in regard to taxation. If the last mentioned act applied to all the cities of the commonwealth, and the term "built up" had come in that way to have a technical meaning in all

of these cities, there would be much force in this argument;
but as the act in question applies to all the cities of the common-
wealth, and refers to a subject totally different from that of tax-
ation, we are of opinion that the phrase "built up portions of
cities" must be understood in its ordinary and popular meaning,
and with reference to the object of the act, viz: the protection
of the public health. The object of the act must be presumed
to be to remove supposed sources of contagion from immediate
contact with a large population. With this meaning of the act
and the situation of the proposed hospital in reference to its
surroundings in view, we are of opinion that the site of the
proposed hospital is in a built up portion of the city of Pittsburg
within the meaning of the act.

II. It is further claimed by the defendant that its hospital is
not an additional hospital, within the meaning of the act of
1899, because it was in existence and operation at the time of
the passage of the act. The general object of the act being to
prevent hereafter the erection of hospital buildings, etc., in the
built up portions of cities, but not to disturb those already law-
fully established and maintained therein, as set out in the pro-
viso, there can be no doubt that the word "additional" is used
in reference to the provisions of the proviso, and does not mean
in addition to the total number now maintained in the whole of
the city, but refers to new buildings not already established.
Besides, it does not definitely appear in this case that the de-
fendant has abandoned, or will abandon, its present location.

We are, therefore, of opinion that the proposed erection is an
additional hospital within the meaning of the act.

III. If these conclusions be correct, and the act of 1899, a
valid law, the defendant would appear to have no right to build
or maintain a hospital upon the proposed site. The defendant
maintains, however, that the act of 1899 is void, as offending
against provisions both of the constitution of Pennsylvania and
of the United States.

1. It is claimed, first, that it is in violation of article 3, sec-
tion 3 of the constitution of Pennsylvania, which provides that no
bill shall be passed containing more than one subject, which shall
be clearly expressed in its title, and that the act in question
contains more than one subject, in that it regulates the location
of hospitals, pest houses and burial grounds, and thus operates

upon three distinct subjects, which are claimed to be entirely dissimilar. It would follow, if this contention be correct, that three separate bills would be necessary to accomplish the object intended by this act. We take the law on this subject to be that, if a statute seeks to accomplish one general purpose by one general means, it will be deemed to contain but one subject, even though the details or specific means are multiplied to any extent provided they are in fact subordinate to, and germane to, the general aim. The general object of the act in question is declared to be to protect the public health ; the general means by which this is to be done is the prohibition, in populous localities, of public institutions which are supposed to bring those who come near them into close contact with disease; and specific forms of these are mentioned, the genus being described by the enumeration of its species. If the general purpose was to protect the public health, and it was sought to accomplish this by various means not cognate with each other, the unity of purpose alone would not save the act; but where one purpose is sought by one means, it would be intolerable if a separate statute were required for each detail.

2. It is further claimed to be in violation of article 3, section 7 of the constitution of Pennsylvania which prohibits the general assembly from passing any local or special law "regulating the affairs of counties, cities," etc. It is argued by the defendant that the act does not relate to any matter peculiar to cities, and does not relate to the exercise of any corporate power; that it is a law applying to only selected portions of the state, and is therefore local. The plaintiff contended that, the act being intended to protect the health of the inhabitants of cities, and the protection of the public health being a recognized subject of municipal control, laws passed in regard to hospitals, etc., in cities, or in any class of cities, are general and not local, because the protection of the public health is a proper matter of municipal control. We cannot agree with this contention of the plaintiff, that merely because an act is intended to protect the public health it may be made to apply to cities, or a particular class of cities, without becoming local. If the legislature, for the protection of health in cities, should undertake to prohibit the sale of cigarettes to minors, or oleomargarine to anybody in all the cities of the commonwealth, it could not be

claimed that the act was valid. There must be the additional element, that the danger to be guarded against has relation to the local conditions. Cigarettes and oleomargarine are equally deadly in the forest and in the city; but not so a hospital or pest house. However this may be, we are of opinion that the act is not intended merely to protect the public health in cities, but is a general act, for the protection of the public health throughout the commonwealth. This is the natural meaning of its words.

Hospitals, pest houses and burial grounds are necessary, and must exist somewhere. As the law stood before this act, they might be placed anywhere except where they became in fact a nuisance or were specially prohibited. A pest house, containing persons with known contagious diseases; a hospital, drawing together in one place a large number of persons affected by disease, and which is thus likely to contain some persons affected by contagious disease; and a burial ground, in which the bodies of those who have died of such diseases may be buried, are all supposed, whether rightly or not, to be sources of contagion to those who come in contact with them, and the greater number of persons who come into such contact, and in turn come into contact with others, the greater the danger of the spread of disease.

If this be true, there is obviously much greater danger to the general public health from such institutions in a populous city than in the country, or in a village, and the danger will be in proportion to the number and density of the population, permanent and transient. The legislature, therefore, having in view on the one hand the danger of the public health, and on the other the necessity for the existence, in proper places, of such institutions, and desiring to regulate the matter so as to draw the line between proper and improper places for them more definitely than before, has to determine where such a line shall be drawn, and how it shall be designated. The problem is, how to designate conveniently the more populous centers, and separate them from the remaining parts of the commonwealth. While it is no doubt true that there are, from time to time, some boroughs of larger population than some of the cities of the commonwealth, yet this must be deemed only a temporary condition, and the intention of the law is that municipal-

ities, called cities, shall be the largest and most populous of the state. When, therefore, the statute prohibits hospitals, etc., in the built up portions of cities, it thereby draws a line having the populous centers on one side and the less populous on the other, in a case where the supposed evil to be regulated does or does not exist, according to the greater or less density of population. If this be a correct analysis of the act, it is, of course, not local legislation, nor legislation concerning the affairs of cities, in any sense, but a general act regulating the location of the institutions in question by prohibiting them in all the more populous places of the state, down to a certain line.

3. Lastly, it is claimed that the act in question is in violation of section 1 of the 14th amendment to the constitution of the United States, in that it is claimed to deprive defendant of its property, or the use of it, without due process of law, and denies to the defendant the equal protection of the law. It is true that the act does prevent the defendant from using its property in a manner which before was lawful, but the defendant, equally with all other persons, natural and artificial, holds its property subject to valid police regulation, made and to be made, for the health and comfort of the people, and if the act in question is such a regulation, the defendant has no cause of complaint. That the regulation or the prohibition in certain localities, of many trades or employments, useful in themselves, if they are harmful, or likely to prove so, to the inhabitants of a thickly settled locality, is within the police power of the state, is not denied; but it is claimed by the defendant that its hospital will not be in fact a nuisance; that hospitals in general are not, and have never been deemed to be, nuisances, and practically, that the statute was made either upon a mistaken idea of the legislature that hospitals are dangerous to the public health in certain circumstances, or else that it was made in bad faith. The prohibition of the erection of hospitals in certain localities for the protection of the public health implies a determination by the legislature of the fact that such hospitals in such places are likely to be dangerous to the public health, and are, therefore, to be deemed nuisances; and this is as apparent from the act as if it were fully set out in a preamble to it. If this finding be conclusive upon the courts in passing on the validity of the act, or enforcing its provisions, as claimed by the plaintiff,

there can be no question of the validity of the act itself. We cannot agree, however, with the proposition that the legislature can do whatever it pleases, provided it declares its purpose to be the protection of the public health. That the legislature, on the one hand, must be the judge of what things are and what are not harmful to the public health or the public safety, and that on the other hand the courts have the right, and are under the duty of ascertaining whether or not the legislature has passed beyond the limits of its power, cannot be doubted. The law on this subject is clearly expressed in the opinion of the Supreme Court of the United States, delivered by Mr. Justice HARLAN, in the case of Mugler v. The State of Kansas, 123 U. S. 661.

The court says:

" It belongs to that department (the legislative) to exert what are known as the police powers of the state, and to determine primarily what measures are appropriate or needful for the protection of the public morals, the public health or the public safety.

" It does not at all follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exertion of the police powers of the state. There are of necessity limits beyond which legislation cannot rightfully go. While every possible presumption is to be indulged in favor of the validity of a statute (Sinking Fund Cases, 99 U. S. 700), the courts must obey the constitution rather than the law-making department of government, and must, upon their own responsibility, determine whether, in any particular case, these limits have been passed. . . . The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty —indeed, they are under a solemn duty—to look at the substance of things whenever they enter upon or inquire whether the legislature has transcended the limits of its authority. If, therefore, a statute, purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the constitution."

If, therefore, it appeared that the prohibition of hospitals in

built up portions of cities, for the protection of the public health, has no real or substantial relation to that object, it would be the duty of the court to disregard the act as invalid and void. This does not mean, however, that the act is to be held invalid merely because, in the opinion of the court, it was founded upon a misapprehension of fact, or a false alarm of danger. That hospitals collect in one place a large number of diseased persons; that among them there are liable to be a greater or less number who are affected by contagious diseases; and that the number of persons affected by contagious diseases may be thus increased in a particular locality, cannot be denied. That the prohibition of hospitals, therefore, in crowded communities, has a real and substantial relation to the protection of the public health in general, must also be admitted. Whether that relation is or is not so close as to justify the prohibition of the building of a hospital is a matter purely for legislative determination, and cannot be reviewed by the courts. We are, therefore, of opinion that the act in question, being within the police power of the state, does not violate the 14th amendment to the constitution of the United States.

IV. The view we have taken of the act of 1899, and its applicability to the facts of this case, make it unnecessary to discuss the constitutionality of the act of 1897, relating to hospitals in cities of the second class.

V. If these conclusions be correct, it will follow that the building of a hospital by the defendant on its proposed site is unlawful. The question remains whether or not the court has jurisdiction in this form of proceeding to enjoin the defendant. Where a public nuisance is committed or threatened, any person specially injured on his private account, or the attorney general, as representing the public interest, may maintain a bill to prevent or abate the nuisance. The act of 1899 is not a penal act, nor does it in fact provide any penalty for the acts prohibited, but declares the prohibited acts to be unlawful, and therefore, necessarily the result of them to be public nuisances; and such bills have frequently been sustained to prevent purprestures, the pollution of waters, etc. If a hospital, to be erected under the circumstances of this case, has been validly declared by the legislature to be a nuisance, it is as much one, as if it had been so at common law, and may be prevented by the same

remedies ; we are therefore of opinion that the bill is properly brought at the relation of the attorney general, and that the commonwealth, as represented by him, has an interest which gives it standing to maintain the bill.

VI. The contention of the defendant that it has not been shown that any damage will be done, or at least that there will be any irreparable damage, is without merit. When the public right is invaded no question of damage can arise : Commonwealth v. Pittsburg & Connellsville R. R. Co., 24 Pa. 160.

The plaintiff is, therefore, entitled to an injunction as prayed for, the costs to be paid by the defendant.

### DECREE.

And now, to wit : September 4, 1900, this cause came on to be heard on bill, answer, replication and testimony, and was argued by counsel and upon consideration thereof, it is ordered, adjudged and decreed that the defendant, the Charity Hospital of the city of Pittsburg be and it is hereby perpetually restrained and enjoined from erecting, maintaining or operating a hospital upon the lot of ground situate in the nineteenth ward of the city of Pittsburg, and lying between Wellesley avenue, Hampton street, St. Clair street and Mellon street.

And it is further ordered that the said defendant pay the costs of this proceeding.

*Error assigned* was the decree of the court.

*J. H. Beal* and *P. C. Knox*, with them *James H. Reed*, for appellant.—The court having found that the act sought to be enjoined will not be a nuisance in point of fact, that it will not in any way injure the health of the people living in the vicinity of the hospital, and it being conceded that no property right of the plaintiff, nor of any one else, is involved, a court of equity has no jurisdiction : Wood on Nuisances, sec. 11 ; 4 Blackstone's Commentaries, 122 ; Com. v. Betts, 76 Pa. 465 ; McElhiney v. Com., 22 Pa. 365 ; Wharton's Criminal Law, sec. 24 ; In re Debs, 158 U. S. 564 ; Emperor of Austria v. Kossuth, 3 De Gex, Fisher & Jones, 217 ; Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401.

The appellant's new building is not an additional hospital

within the meaning of the act of 1899 : Updike v. Skillman, 27 N. J. L. 132; Brown v. Hunn, 27 Conn. 332.

The appellant's proposed hospital is not located in a built up portion of the city: Act of May 5, 1876, P. L. 124.

The Act of April 20, 1899, P. L. 66, making unlawful the establishment and maintenance of additional hospitals in the built up portions of cities, is unconstitutional and void. The act groups together three distinct subjects: Perkins v. Phila., 156 Pa. 554; In re Beech and Page Streets, 91 Pa. 358; Commonwealth v. Dickinson, 1 W. N. C. 185; McCaffrey v. Allegheny, 131 Pa. 137.

The act is local and special legislation for cities, and violates article 3, section 7 of the constitution.

The act violates section 1 of the fourteenth amendment to the constitution of the United States: Charlotte, etc., R. R. Co. v. Gibbes, 142 U. S. 386; Slaughter-House Cases, 83 U. S. 36; Yick Wo v. Hopkins, 118 U. S. 356; Lawton v. Steele, 152 U. S. 137; Mugler v. Kansas, 123 U. S. 552; Marbury v. Madison, 1 Cranch, 137; Scotland County v. Hill, 112 U. S. 183.

*Johns McCleave,* with him *W. B. Rodgers* and *D. T. Watson,* for appellee.—The court considered and found that the erection of the proposed hospital, in violation of the act of 1899, would constitute and be a public nuisance, and, if so, within the jurisdiction of a court of equity to restrain, at the suit of the attorney general: Story's Eq. Juris. sec. 921–925; Mugler v. Kansas, 123 U. S. 638; Com. v. Rush, 14 Pa. 186; Attorney General v. Hackney Local Board, L. R. 20 Eq. 626; Attorney General v. Leeds Corporation, L. R. 5 Ch. App. Cas. 583; Attorney General v. Jamaica Pond Aqueduct, 133 Mass. 363; Attorney General v. Proprietors of the Bradford Canal, L. R. 2 Eq. 71; Dudley v. Mayhew, 3 N. Y. 9; Smith v. Lockwood, 13 Barb. 215; Attorney General v. Shrewsbury & Kingsland Bridge Co., 51 L. J. Ch. 746; Ware v. Regent's Canal Co., 3 De Gex & Jones, 212; Agar v. Regent's Canal Co., Cooper's Chan. Cases, 77; Attorney General v. Great Northern R. R. Co., 1 Drew & S. 154; Atty. Gen. v. Mid-Kent. Ry. Co. L. R. 3 Ch. 100; Atty. Gen. v. Leeds Corp., L. R. 5 Ch. 583; Atty. Gen. v. Great Eastern Ry. Co., L. R. 11 Ch. Div. 449; Atty. Gen. v. Great Northern Ry. Co., 4 De Gex & S. 75; Atty. Gen. v.

Cohoes Co., 6 Paige (N. Y.), 133; Buck Mountain Coal Co. v. Lehigh Coal & Nav. Co., 50 Pa. 91.

The site selected for the proposed hospital is in a built up portion of the city.

The statute was intended to correct an evil, to more safely guard the public health in the future.    It is a remedial statute, not a penal one, and must be liberally construed to protect against the evil aimed at: Wolcott v. Pond, 19 Conn. 597; Potter's Dwarris on Statutes, 231; Lehigh Bridge Co. v. Lehigh Coal & Nav. Co., 4 Rawle, 9; Schuylkill Nav. Co. v. Loose, 19 Pa. 15.

The act of 1899 is constitutional: Road in Phœnixville, 109 Pa. 48; Com. v. Jones, 4 Pa. Superior Ct. 362; Dorsey's App., 72 Pa. 192; Taggart v. Com., 102 Pa. 354; Com. v. Wyman, 137 Pa. 508; Wyoming Street, 137 Pa. 494; Weinman v. Wilkinsburg, etc., Pass. Ry. Co., 118 Pa. 192; Ruan Street, 132 Pa. 276; Klingler v. Bickel, 117 Pa. 326; People v. Pratt, 129 N. Y. 68; Craig v. First Presbyterian Church, 88 Pa. 51.

The act does not violate section 1 of the 14th amendment to the constitution of the United States: Dillon on Muncipal Corporations, secs. 141–144; Powell v. Com., 114 Pa. 295; Barbier v. Connolly, 113 U. S. 27; Butchers Union Co. v. Crescent City Co., 111 U. S. 746; Cronin v. People, 82 N. Y. 318; Slaughter-House Cases, 16 Wall. 36; Missouri Pacific Ry. Co. v. Humes, 115 U. S. 522; Kincaid's App., 66 Pa. 423; Brick Presbyterian Church v. Mayor of New York, 5 Cowen, 538; State v. Joyner, 81 N. C. 534; Ex parte McClain, 61 Cal. 436; Bronson v. Oberlin, 41 Ohio, 476; Mugler v. Kansas, 123 U. S. 623; Boston Beer Co., v. Mass. 97 U. S. 33; Mayor of Hudson v. Thorne, 7 Paige, 261; Lawton v. Steele, 152 U. S. 133; Powell v. Com., 114 Pa. 325.

PER CURIAM, January 7, 1901:

The bill in equity was filed and promptly proceeded with to prevent the erection of a charity hospital in a built up portion of the city of Pittsburg.    Two acts of assembly, to wit: the act of June 10, 1897, and the act of April 20, 1899, are contained therein, and in the answers to the bill are declared to be unconstitutional and void acts.    The parties resisting the prevention of the erection of the proposed hospital in the place they

had prescribed for it strenuously affirm that the location is a proper one and conducive to the convenience and welfare of the general public. On the other hand the parties opposed to the erection of a hospital at the place designated contend that the erection of it there would be in violation of the prohibition of the aforesaid acts and injurious to the public health. The evidence submitted by the contending parties to the issue framed by bill and answer was carefully scrutinized and considered by the learned judge of the court below, and the result of it appears in his findings of fact and conclusions of law. An examination of these, of the testimony submitted as above stated, and of the law applicable to the case, has failed to convince us of error in the decree or in the findings of fact or conclusions of law on which it is based.

Decree affirmed and appeal dismissed at the cost of the appellant.