[No. 8849. Department Two. July 16, 1910.]

AGNES W. B. SHEPARD *et al., Appellants*, v. THE CITY OF
SEATTLE, *Respondent*.[1]

MUNICIPAL CORPORATIONS—ORDINANCE—VALIDITY. Where an ordi-
nance regulates several kinds of hospitals by provisions that are
severable both as to the character of the institutions and the require-
ments to be met, some of the requirements may be valid and others
invalid, or they may be valid as to one kind of an institution and
invalid as to another; and it will be upheld in so far as it is valid.

MUNICIPAL CORPORATIONS—POLICE POWER. In all matters pertain-
ing to the public health and safety, substantially the entire police
power of the state is vested in municipal corporations of the first
class.

[1]Reported in 109 Pac. 1067.

MUNICIPAL CORPORATIONS—POLICE POWER—HOSPITALS — REGULA-
TIONS. Under the police power, a city of the first class may prohibit
the maintenance of a private hospital tending to spread contagious
diseases in crowded localities, and may require the same to be con-
nected with the sewers of the city.

SAME—NUISANCES—PRIVATE HOSPITALS FOR INSANE. It is a proper
exercise of the police power for an ordinance of a city of the first
class to declare any private hospital or sanitarium for the treatment
of inebriates or persons suffering from insanity or other mental dis-
eases to be a public nuisance, unless its location and maintenance are
consented to in writing by the owners of private property situated
within 200 feet of the hospital buildings; since it would practically
destroy the value of all residential property in its immediate vicinity,
and the danger differs in kind rather than in degree.

SAME—PERMIT FOR PRIVATE HOSPITAL. The provision requiring a
written permit from the city commissioners of health, in an ordi-
nance prohibiting the maintenance of a private hospital for the
treatment of the insane except under certain conditions, is not objec-
tionable as an unreasonable exercise of the police power.

MUNICIPAL CORPORATIONS—ORDINANCE—VALIDITY — MOTIVE — JUDI-
CIAL POWER. A general ordinance, valid on its face, is not rendered
void by the fact that it was passed at the solicitation of persons re-
siding in a certain locality as a local and special regulation; as the
motives of the council cannot be inquired into by the courts.

Appeal from a judgment of the superior court for King
county, W. T. Dovell, Esq., judge *pro tempore*, entered
March 14, 1910, upon findings in favor of the defendant,
after a·trial on the merits before the court without a jury,
dismissing an action to restrain the enforcement of an or-
dinance. Affirmed.

*Butler & Crews, Shepard & Flett*, and *Shepard & Daly*, for
appellants, contended, among other things, that the hospital
is not a nuisance *per se*. *Ex parte Whitwell*, 98 Cal. 73, 32
Pac. 870, 35 Am. St. 152, 19 L. R. A. 727; *Quintini v. City
of Bay, St. Louis*, 64 Miss. 483, 1 South. 625, 60 Am. Rep.
62; *In re Quong Woo*, 13 Fed. 229; *Stockton Laundry Case*,
26 Fed. 611; *In re Sam Kee*, 31 Fed. 680; *In re Hong Wah*,
82 Fed. 623; *Ex parte Sing Lee*, 96 Cal. 354, 31 Pac. 245,
31 Am. St. 218, 24 L. R. A. 195; *City of Shreveport v. Rob-
inson*, 51 La. Ann. 1314, 26 South. 277; *Yick Wo. v. Hop-*

*kins,* 118 U. S. 356; *Musgrove v. Catholic Church of St. Louis,* 10 La. Ann. 431; *New Orleans v. Wardens of Church of St. Louis,* 11 La. Ann. 244; *Town of Lake View v. Letz,* 44 Ill. 81; *Payne v. Wayland,* 131 Iowa 659, 109 N. W. 203; *Wygant v. McLauchlan,* 39 Ore. 429, 64 Pac. 867, 87 Am. St. 673, 54 L. R. A. 636; *State ex rel. Board of Health of Hamilton Township v. Inhabitants of Trenton* (N. J.), 63 Atl. 897; *Frazer v. Chicago,* 186 Ill. 480, 57 N. E. 1055, 78 Am. St. 296, 51 L. R. A. 306; *Veraguth v. Denver,* 19 Colo. App. 473, 76 Pac. 539. And the injury must be not a merely fanciful one. Wood, Nuisance, § 673; *Elliott v. Ferguson,* 37 Tex. Civ. App. 40, 83 S. W. 56; *Ponder v. Quitman Ginnery,* 122 Ga. 29, 49 S. E. 746. The fact that a business or trade impairs the value of adjoining property does not make it a nuisance unless it results in actual physical discomfort, or a tangible, visible injury to the property itself. *Perry v. Howe Co-op. Creamery Co.,* 125 Iowa 415, 101 N. W. 150; *Town of Frostburg v. Hitchins,* 99 Md. 617, 59 Atl. 49; *Stein v. Lyon,* 91 App. Div. 593, 87 N. Y. Supp. 125; *Gallagher v. Flury,* 99 Md. 181, 57 Atl. 672; Freund, Police Power, § 178; *Boyd v. Board of Councilmen of Frankfort,* 25 Ky. Law, 1311, 77 S. W. 669; *Louisville & Northern Terminal Co. v. Jacobs,* 109 Tenn. 727, 72 S. W. 954, 61 L. R. A. 188. As to the power of a city council to declare things nuisances, see *City of Passaic v. Paterson Bill Posting etc. Co.,* 72 N. J. L. 285, 62 Atl. 267; *Town of Frostburg v. Hitchins, supra; Brown v. Town of Carrollton,* 122 Mo. 276, 99 S. W. 37. To justify public legislative interference with it, its injurious character must rest upon something more than its proximity to property in private ownership, and must affect some other and more public interest than the mere value of the private right of property in neighboring land. *Town of Fulton v. Norteman,* 60 W. Va. 562, 55 S. E. 658, 9 L. R. A. (N. S.) 1196; *Gallagher v. Flury, Perry v. Howe Co-op. Creamery Co.,* and *Stein v. Lyon, supra.* An ordinance procured to be passed for a private

and not for a public purpose is against public policy. *In re Frederick Street*, 12 Pa. Co. Ct. 577; *Town of Fulton v. Norteman*, and *Yick Wo v. Hopkins, supra.* Ordinances must be reasonable. Dillon, Municipal Corporations (4th ed.), § 319; *Corrigan v. Gage*, 68 Mo. 541; *St. Louis v. Dorr*, 145 Mo. 466, 41 S. W. 1094, 46 S. W. 976, 68 Am. St. 575, 42 L. R. A. 686; *Mayor etc. of Baltimore v. Radecke*, 49 Md. 217, 33 Am. Rep. 239; *State, Long, pros. v. Mayor etc. of Jersey City*, 37 N. J. L. 348; *Austin v. Murray*, 16 Pick. 121; *Lake Shore etc. R. Co. v. Smith*, 173 U. S. 684; Tiedeman's Limitations of Police Power, § 194; Freund, Police Power, §§ 63, 142. The regulation must tend to remove danger. Freund, Police Power, §§ 148, 149; *Chicago v. Netcher*, 183 Ill. 104, 55 N. E. 707, 75 Am. St. 93, 48 L. R. A. 261; *Noel v. People*, 187 Ill. 587, 58 N. E. 616, 79 Am. St. 238, 52 L. R. A. 287. And the restraint must be proportionate to the danger. *Toledo etc. R. Co. v. Jacksonville*, 67 Ill. 37, 16 Am. Rep. 611. The ordinance was void because it required the consent of the health commissioners. *Spokane v. Camp*, 50 Wash. 554, 97 Pac. 770, 126 Am. St. 913; *Chicago v. Gunning System*, 214 Ill. 628, 73 N. E. 1035, 70 L. R. A. 230; *Tilford v. Belknap*, 31 Ky. Law 662, 103 S. W. 289, 11 L. R. A. (N. S.) 708; *In re Quong Woo*, and *Austin v. Murray, supra.* The authorities are all against such grants of arbitrary administrative power. Freund, Police Power, §§ 643-5; *City Council of Montgomery v. West*, 149 Ala. 311, 42 South. 1000, 9 L. R. A. (N. S.) 659; *City of Sioux Falls v. Kirby*, 6 S. D. 62, 60 N. W. 156, 25 L. R. A. 621; *Bostock v. Sams*, 95 Md. 400, 52 Atl. 665, 93 Am. St. 394, 59 L. R. A. 282; *In re Camp*, 38 Wash. 393, 80 Pac. 547; *White v. Mears*, 44 Ore. 215, 74 Pac. 931; *Noel v. People*, 187 Ill. 587, 58 N. E. 616, 79 Am. St. 238, 52 L. R. A. 287; *St. Louis v. Russell*, 116 Mo. 248, 22 S. W. 470, 20 L. R. A. 721; *Wong Wai v. Williamson*, 103 Fed. 1; *Jew Ho v. Williamson*, 103 Fed. 10; *Yick Wo v. Hopkins, supra; In re Jacobs*, 98 N. Y. 98, 50 Am.

Rep. 636; *Hume v. Laurel Hill Cemetery*, 142 Fed. 552.
If any part of the ordinance is bad it is all bad. *Austin v.
Murray, supra; Warren v. Mayor, etc. of Charlestown*, 2
Gray (Mass.) 84; *Daly v. Morgan*, 69 Md. 460, 16 Atl. 287,
1 L. R. A. 757; *Robinson v. Bidwell*, 22 Cal. 379; *Skagit
County v. Stiles*, 10 Wash. 388, 39 Pac. 116.

*Scott Calhoun, H. D. Hughes*, and *Peters & Powell*, for
respondent.

RUDKIN C. J.—This action was instituted by the plaintiffs,
as owners and lessees of certain property in the city of Seat-
tle, to restrain the city from enforcing, as against the plain-
tiffs and their property, the provisions of an ordinance en-
titled, "An ordinance regulating the location and mainte-
nance of private hospitals and sanitariums, and providing
for penalties for the violation of the provisions hereof, and
declaring an emergency."

Section one of the ordinance reads as follows:

"No private hospital or sanitarium shall be established or
maintained within the city of Seattle in any building in which
any of the sinks or water closets or other drainage are not
connected with the public sewers of the city, nor shall any pri-
vate hospital or sanitarium for the treatment of inebriates or
persons suffering from insanity or other mental diseases be
established or maintained in any buildings situated within two
hundred (200) feet of any private property the owner of
which has not consented in writing to the location and main-
tenance of such hospital or sanitarium, nor in any building
without the written permit from the commissioners of health
of the city of Seattle." Seattle Ordinance, No. 20,008.

Section two provides a penalty for any violation of the
provisions of section one; section three declares any hospital
or sanitarium established or maintained contrary to the pro-
visions of section one to be a public nuisance and provides for
its abatement; and section four declares an emergency. The
court below made findings of fact and conclusions of law, and
entered judgment dismissing the action. From the judgment

of dismissal, the plaintiffs have appealed, and the case is
brought here for review on the findings of the court, without
a statement of facts or bill of exceptions.    The material
findings made by the trial court are the following:

"The plaintiffs Shepard for more than five years last past
have been and are the owners of certain real estate in the
city of Seattle, described as lots one (1), two (2), three (3),
ten (10), eleven (11) and twelve (12), in block nineteen
(19) of John J. McGilvra's second addition to Seattle, upon
which there is being conducted by the plaintiffs Loughary
and Williamson, who hold said premises under a lease from
the plaintiffs Shepard bearing date the 10th day of December
1908, a sanatorium for the treatment of persons suffering
from nervous and mental diseases, including insane persons.
About the year 1902 the plaintiffs Shepard erected on said
premises, for residence purposes, the building now in use
under said lease as the main sanatorium building, and subse-
quently the other two buildings thereon, which are small cot-
tages; and about the time of making said lease they, in com-
pliance with its terms, commenced to make sundry valuable
improvements upon said buildings and premises, involving a
total expense to them of about four thousand dollars, but
which improvements were not entirely completed at the time
of the passage of the ordinance giving rise to this suit.

"(2)   Said premises are situated at a distance of about
three miles from the center of business in said city, and in a
region suitable for residence purposes and in which such
residences as have been erected are of good character; but
there is only one house upon the remainder of the block con-
taining said premises (the same being a residence situated
on the southwest one-quarter of said block, about sixty feet
south of said main sanatorium building, and the grounds
whereof comprise said entire quarter-block)—the plaintiffs'
said premises comprising the entire north half of said block
—and there is only one house upon the block next west of that
containing said premises (the grounds of which residence
comprise said entire block), there are no houses on the block
next west or on the block diagonally northwest of that con-
taining said single residence, only three on the block diago-
nally northwest of that containing the plaintiffs' said prem-
ises, only three on the block next north of that containing

said premises, one on the block diagonally northeast of that containing said premises (on the corner thereof most distant from the plaintiffs' said premises), two or three on the easterly side of the block next east of that containing said premises, none on the block diagonally southeast of that containing said premises, two on the block next south of that containing said premises, and one on the block diagonally southwest of that containing said premises (the grounds of which residence comprise said entire block); each of said blocks consisting of twelve full-size lots of average dimensions of about sixty by one hundred and twenty feet. A great many of the lots in said region are not yet cleared up, and have original forest growth upon them; and there is a large tract of practically unoccupied ground, with very few houses upon it, lying north of Madison street, between said street and Union Bay, on the same hill as the plaintiffs' said premises.

"(3)  Said premises are situated on a hillside sloping toward Lake Washington, having natural adaptation for drainage. All said buildings thereon are connected with septic tanks on said premises, built of concrete; the septic tank connected with said main sanatorium building, which was the earliest built of said tanks, was built according to plans and specifications furnished therefor to the plaintiffs Shepard by the city engineer of the defendant, of ample capacity to accommodate a building of that size, long prior to the use of said premises for sanatorium purposes; and prior to the occupation of said premises for sanatorium purposes the board of health of the defendant made an examination of the premises and found them to be in a sanitary condition.

"(4)  The plaintiffs Loughary and Williamson are regularly licensed physicians and surgeons, and especially skilled in the treatment of nervous and mental diseases; and in said sanatorium they care for a number of patients who are thus afflicted, including some who are insane. It is not their purpose to harbor as inmates any violent or dangerous persons, but they claim and have the right under their said lease to harbor on said premises persons suffering from any and all kinds of insanity. The windows of said sanatorium are barred with iron screens, and there is a sufficient force of trained nurses, attendants and guards properly to care for the patients and inmates of said institution, and said windows are so barred for the purpose of preventing any of said

patients from escaping, and attendants and guards are employed for the same purpose; but said premises are not fenced or otherwise inclosed. Said lessees have expended about three thousand dollars in furnishing and equipping said sanatorium.

"(5)  Said lease was in full force and effect and said lessees were in possession of said premises thereunder and using the same for the purposes of a sanatorium prior to the passage of ordinance No. 20,008 of the city of Seattle, the passage of which ordinance gave rise to this suit.

"(6)  Said sanatorium is not connected with the public sewers of said city, and consent to the location and maintenance thereof on said premises has not been obtained from the owners of any of the private property situated within two hundred feet of the buildings in which it is maintained, and no permit for its maintenance in said buildings has been granted by the commissioners of health of the defendant; but there is no public sewer of said city within one thousand (1,000) feet nor within three blocks of said buildings, and ordinance No. 16,372 of said city provides that buildings which are put to ordinary uses must be connected with the public sewers of said city only when there is a sewer within one block of such buildings. There is no block exceeding three hundred (300) feet in length among those surrounding that in which said sanatorium is situated."

In support of their assignments of error the appellants contend, that "A private sanatorium for the care of persons suffering from insanity or other mental diseases is not a public nuisance *per se*, and cannot be made a public nuisance, if not such in fact, by mere declaration of a municipal legislature;" that "the findings of the trial court establish that the plaintiffs' sanatorium is not a public nuisance in fact," and that the ordinance deprives the appellants of their property without due process of law, and denies to them the equal protection of the law, in violation of the state and Federal constitutions.

The ordinance applies to different kinds of hospitals and sanitariums, and prescribes different requirements with which those desiring to establish and maintain such institutions must comply. The provisions of the ordinance are sever-

able, both as to the character of the institution and the requirements to be met or complied with. Some of these requirements may be valid and others invalid, or they may be valid as to one kind of an institution and invalid as to another. *Seattle v. Pearson*, 15 Wash. 575, 46 Pac. 1053; *City of Eureka v. Wilson*, 15 Utah 67, 48 Pac. 150, 62 Am. St. 904; *Bailey v. State*, 30 Neb. 855, 47 N. W. 208; *Mayor etc. of Birmingham v. Alabama G. S. R. Co.*, 98 Ala. 134, 13 South. 141; *Ex parte Bizzell*, 112 Ala. 210, 21 South. 371; *State ex rel. Lamar v. Dillon*, 42 Fla. 95, 28 South. 781; *Baker v. Lexington*, 21 Ky. Law 809, 53 S. W. 16; *Rockville v. Merchant*, 60 Mo. App. 365. In the discussion of this case we will, therefore, limit ourselves as far as practicable to hospitals or sanitariums for the treatment of persons suffering from insanity or other mental diseases, such as the lessees propose to establish and maintain on the premises in question.

"It is a proper exercise of the police power of the state to prohibit the establishment of private hospitals in localities where by reason of the crowded condition of the neighborhood, or for other reasons, such location would tend to spread contagious diseases, and in the exercise of its police power a municipality may prescribe reasonable regulations for the draining of the premises of private hospitals within the city limits, for the purification and ventilation of the buildings, for the removal therefrom of any patients having infectious or contagious diseases, and for the general management of the hospital grounds and buildings.. In Pennsylvania by statutory enactment it has been made unlawful 'hereafter to establish or maintain any additional hospital . . . in the built-up portions of cities; provided, however, that nothing herein contained shall be so construed as to prevent the maintenance of any hospital . . . now lawfully established and maintained.'" 21 Cyc. 1110.

Cooley, Constitutional Limitations (6th ed.), 740 *et seq.*

Thus in *Milne v. Davidson*, 5 Martin, N. S. (La.) 409, 16 Am. Dec. 189, an ordinance of the city of New Orleans, prohibiting the erection of private hospitals within the city

limits, was upheld as a valid police regulation, but the decision was perhaps controlled in a measure by local sanitary conditions. In *Commonwealth v. Charity Hospital of Pittsburg*, 198 Pa. 270, 47 Atl. 980, an act prohibiting the establishment or maintenance of additional hospitals in the built-up portions of cities was sustained as a valid exercise of the police power.·

In *Bessonies v. Indianapolis*, 71 Ind. 189, cited by the appellants, it was held that an ordinance of the city of Indianapolis prohibiting the establishment or maintenance of hospitals within the city limits, without a license or a permit from the common council, was not within the powers conferred upon the city by the legislature of the state, but the power of the state itself was not involved or considered. And we might say in this connection that no question is here involved as to the power of the city of Seattle, as contradistinguished from the power of the state itself, for in all matters appertaining to the public health and public safety substantially the entire police power of the state is vested in municipal corporations of the first class. *Smith v. Spokane*, 55 Wash. 219, 104 Pac. 249. But even in the *Indianapolis* case the court conceded that,

"Under its police powers, the city, by its law-making authorities, might, perhaps, prescribe reasonable rules and regulations for the drainage of the hospital grounds, the purification and proper ventilation of the buildings, for the removal therefrom of any person afflicted with infectious or contagious diseases, and for the general management and government of the hospital grounds and buildings, both internally and with relation to the adjacent and surrounding property; and such reasonable rules and regulations may doubtless be enforced with proper penalties."

This authority would sustain the provision of the present ordinance requiring hospitals to connect with the public sewers of the city—at least such hospitals as harbor persons suffering from infectious or contagious diseases. Whether reasonable as to a hospital of the character here in question

we need not inquire, for we are convinced that the second requirement of the ordinance is both reasonable and valid. The ordinance, in effect, declares that any private hospital or sanitarium for the treatment of inebriates, or persons suffering from insanity or other mental diseases, is a public nuisance, and shall be abated as such, unless its location and maintenance are consented to in writing by the owners of private property situated within two hundred feet of the hospital buildings. This, in our opinion, is a valid and reasonable police regulation. The presence of a private insane asylum, with its barred windows, and irresponsible inmates, would annoy, injure, and endanger the comfort, safety, and repose of any person of average sensibilities, if located within two hundred feet of his place of abode. In other words, it is a matter of common knowledge that the presence of such an institution in a residential portion of a city would practically destroy the value of all property within its immediate vicinity for residence purposes. If so, it was proper and competent for the municipal authorities to require the assent of the injured parties to its location and maintenance. *Spokane v. Camp*, 50 Wash. 554, 97 Pac. 770, 126 Am. St. 913.

In the argument before this court much stress was laid on the case of *Ex parte Whitwell*, 98 Cal. 73 32 Pac. 870, 35 Am. St. 152, 19 L. R. A. 727, but the two cases have little in common, aside from the fact that the two ordinances under consideration are directed against substantially the same business or occupation. The petitioner in that case had purchased 22 acres of land in San Mateo and constructed hospital buildings thereon at great expense. The ordinance directed against him and his property was extremely onerous in its terms. It prohibited the maintenance of such hospitals in any but fireproof buildings; it prohibited their location within 400 yards of any school or residence; it required the construction of a brick or stone wall, 18 inches thick and 12 feet high, around the hospital buildings and grounds, and contained other provisions of a like nature. While the su-

preme court of California held that the ordinance was unreasonable and void, it nevertheless conceded that,

"In the management of a hospital where insane persons are treated, it is necessary, and it must be presumed that there will be a sufficient number of competent attendants to prevent danger or damage from any unreasonable actions of such insane persons. Without such attendants no such asylum or hospital could be properly conducted."

Again the court said,

"The board of supervisors of a county, or the legislative department of any city or town in which such an asylum is erected, may, undoubtedly, provide by ordinance that patients therein shall not be permitted to leave the grounds upon which it is erected, unless accompanied by an attendant, and may impose a penalty upon the superintendent or keeper of such asylum for a failure to conform to such regulation."

The court here recognizes the self-evident fact that insane persons are dangerous, and if so, may not a city protect itself against them by excluding private insane asylums from its limits? May it not refuse to entrust the safe keeping of this dangerous class to private parties, in whose selection it has no choice, and over whose conduct it has no direct control?

"Generally it is for the legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety, and while its measures are calculated, intended, convenient and appropriate to accomplish these ends, the exercise of its discretion is not subject to review by the courts." *In re Jacobs,* 98 N. Y. 98, 110, 50 Am. Rep. 636.

"In the exercise of this power the legislature has the right, generally, to determine what laws are needed to preserve the public health and protect the public safety." *People v. Havnor,* 149 N. Y. 195, 200, 43 N. E. 541, 52 Am. St. 707, 31 L. R. A. 689.

"The judiciary can only arrest the execution of a statute when it conflicts with the constitution. It cannot run a race of opinions upon points of rights, reason and expediency with the law-making power." Cooley, Constitutional Limitations (6th ed.), 201.

Hospitals for the treatment of patients suffering from infectious and contagious diseases have often been adjudged nuisances, when located in the residential parts of cities and towns (*Cherry v. Williams*, 147 N. C. 452, 61 S. E. 267, 125 Am. St. 566; *Deaconess Home & Hospital v. Bontjes*, 207 Ill. 553, 69 N. E. 748, 64 L. R. A. 215); and danger from the immediate presence of a hospital of this kind differs in kind rather than in degree.

The third requirement of the ordinance is a written permit from the city commissioners of health, but this requirement is apparently for the purpose of showing that the other provisions of the ordinance have been complied with. In any event the requirement is unobjectionable in itself. *Wilson v. Eureka City*, 173 U. S. 32.

The appellants further contend that the ordinance is void because the answer admits that it was enacted "At the solicitation of persons residing in the vicinity of said premises, and solely in their behalf as a local and special regulation." We are not permitted to inquire into the motives of the city council. If the ordinance is valid on its face, the reasons or arguments that may have moved the city council to act are not pertinent here.

There are many unpleasant and annoying things that must be borne by those living in a state of organized society, in order that others may enjoy their equal rights under the law, but the preservation of the public health and public safety is one of the chief objects of local government, and every citizen holds his property subject to a reasonable exercise of the police power of the state.

In our opinion this ordinance is a reasonable and proper application of the time-honored maxim, *sic utere tuo ut alienum non laedas,* and is sustained by the maxim, *salus populi suprema est lex,* in which the police power of the state finds its chief support.

The judgment of the court below is therefore affirmed.

CROW, MOUNT, and DUNBAR, JJ., concur.