# FRENCH v. THE ASSOCIATION FOR WORKS OF MERCY.*

ASYLUMS AND HOSPITALS; NUISANCE; INJUNCTION.

1. An institution incorporated under the laws of the District of Columbia, for the performance of works of mercy, reformatory and preventive, and for the establishment of an industrial home for girls, is not a hospital or asylum within the meaning of the act of Congress of April 20, 1908 (35 Stat. at L. 64, chap. 148), sec. 1 of which provides that there shall not be established in the District of Columbia "any private hospital or asylum, either for the reception of human beings or of domestic animals, unless or until licensed by the commissioners of said District," both the terms "hospital" and "asylum" having been used in the statute in their ordinary acceptation; and therefore the maintenance and operation of such an institution will not be enjoined for a failure to obtain the license prescribed by the act.

2. An institution for the uplift of unfortunate girls is not a nuisance per se; and the maintenance and operation of such an institution will not be enjoined as a nuisance where the evidence shows that it is conducted with the utmost care, and with due regard to the comfort and welfare of those living in the neighborhood; that there are no noises save such as are usual and natural in homes where young people are assembled and where infants are gathered; and that the objection is more to the character of the institution than to the manner in which it is conducted. (Citing Akers v. Marsh, 19 App. D. C. 45.)

No. 2443. Submitted November 8, 1912. Decided December 30, 1912.

HEARING on an appeal by the complainant in a suit in equity for an injunction from a decree of the Supreme Court of the District of Columbia dismissing his petition.    Affirmed.

---

*Hospital; nuisance.—Upon the general question whether a hospital is a nuisance, see note to Stotler v. Rochelle, 29 L.R.A.(N.S.) 49.

The facts are stated in the opinion.

*Mr. C. F. Diggs* for the appellant.

*Mr. W. A. Gordon* and *Mr. J. H. Gordon* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from a decree in the supreme court of the District dismissing appellant's bill for a permanent injunction against the operation and maintenance of the institution of the appellee, the Association for Works of Mercy, upon the theory that it is an asylum or hospital within the meaning of the act of April 20, 1908, 35 Stat. at L. 64, chap. 148, and that, regardless of whether it is such an asylum or hospital, it is, as maintained, a nuisance.

For many years the appellee institution was located at the corner of K and 24th streets, N. W., in this city. In September, 1911, it was moved to its present location at Klingle road and Rosemont avenue, N. W., near the Zoological Park. Appellant's home was and is within 90 feet from the building line of the institution. In his bill, after setting forth the provisions of said act of 1908, the regulations of the commissioners of the District of Columbia thereunder, and the failure of appellee to obtain the license prescribed by said act, appellant further avers that he has been greatly injured and damaged in that "the noises of the children and inmates of the said institution prevent the quiet enjoyment of his said property, and constitute a nuisance which causes him special and peculiar damage owing to the fact that his said residence is the only one affected thereby."

In its answer the appellee denies that it has established or maintained any private hospital or asylum in its said buildings; avers that its work has been, as set forth in its certificate of incorporation, "the performance of works of mercy, reformatory and preventive, and for the establishment of an industrial home for girls;" that it receives unfortunate girls, gives them a home

where they may be guarded from further temptation, and where they, and their infant children, may be cared for, and where they may be taught habits of industry and given moral assistance and guidance, to the end that they may become worthy and useful members of society; that the institution is a part of the church work under the auspices of the diocese of Washington, the bishop of Washington being its president; and that it is supported entirely by voluntary contributions. It is further averred that the institution is conducted with the utmost care and with due regard to the comfort and welfare of those living in the neighborhood; that there are no noises save such as are usual and natural in homes where young people are assembled and where infants are gathered; that there are now in the home about twenty-four young women, ranging in age from fourteen to twenty-six years, and seventeen infants, ranging in age from two months to six years; that none of the children were born in the institution; that there is no resident physician; that in the event any of the inmates of the home are ill, physicians attend them without charge; and that persons are not brought into the institution to be treated.

The testimony of the appellant tended to show that noises were heard of the children playing and sometimes crying; that the laughing of the girls within the inclosure while at play was also sometimes heard, and, upon a few occasions, according to the testimony of one witness—a girl of thirteen—some of the girls in the institution called "Cutey" to her. It was also in evidence that the girls of the institution, upon one occasion, as appellant was proceeding to get on his horse, remarked: "Oh, look at the boots he has on." On another occasion appellant was about to go out driving, and was obliged to return to his house several times to get something he had forgotten. Several girls of the institution, at one of its windows, immediately burst out laughing loudly, thereby annoying appellant. There was some evidence that on certain evenings there was music and song at the institution, the songs being of the rag-time order. Two real estate men testified that, in their opinion, there had been a depreciation in value of appellant's property

by reason of the establishment and maintenance of the appellee institution in the vicinity.

The evidence of the appellee was to the effect that no children were born at the institution; that the girls are under the direction and in charge of a deaconess, and they do all the work in the large house, keep it in order, do their own washing, ironing, and sewing; that the girls are taught sewing and most of them trained to be good domestic servants; that some, who have sufficient education, are encouraged to work in offices as typewriters and stenographers; that the results of the efforts of the institution have been most encouraging; that at 8:30 P. M. the chapel bell of the institution rings, and twenty minutes thereafter the girls go to their rooms, and are quiet until 6 o'clock in the morning; that every Monday evening one of the ladies of the board of lady managers gives an entertainment in the institution, but that no unusual noise or disorder results therefrom; that the children are well cared for and the girls subject to the regulations of the institution and under constant supervision; that their conduct is not in any way objectionable, and, in short, that the institution is well conducted and its inmates well behaved. There was also evidence from real estate men tending to meet that offered by the appellant as to the depreciation in value of his property.

The first question for determination is whether the appellee institution is a "private hospital or asylum" within the meaning of said act of April 20, 1908. Sec. 1 of that act ordains that there shall not be established in the District of Columbia "any private hospital or asylum, either for the reception of human beings or of domestic animals, unless or until licensed by the commissioners of said District." Sec. 2 imposes upon the health officer of the District the duty of inspection and of enforcing the provisions of the act and regulations thereunder. Sec. 3 prescribes penalties for violations of the act. Sec. 4 empowers the commissioners of the District to promulgate "such regulations as in their judgment public interests require to govern the establishment and maintenance of private hospitals

and asylums, *whether for human beings or for domestic animals.*"

A hospital, in the ordinary acceptation of that term, is an institution for the reception and care of sick, wounded, infirm, or aged persons. 21 Cyc. 1105. In its widest sense, "a place appropriated to the reception of persons sick or infirm in body or in mind." *Needham* v. *Bowers,* L. R. 21 Q. B. Div. 436. In Great Britain it has been used in some instances "to denote an institution in which poor children are fed and educated. But that is not the ordinary meaning of the word." *Dilworth* v. *Stamp Comrs.* [1899] A. C. 99, 47 Week. Rep. 337. The word is more commonly applied "to a building founded through charity, where the sick and disabled may be treated solely at their own expense, or at the sole expense of the corporation." *Re Curtiss,* 1 Connoly, 471, 7 N. Y. Supp. 207. It is evident, we think, that Congress used the word in this act in its general sense, that is, as applying to an institution for the treatment of the sick or infirm. The qualifying clause in the 1st and 4th sections, to the effect that the act shall apply to any private hospital or asylum, either for the reception of *human beings or of domestic animals,* clearly indicates this. Evidently Congress primarily had in mind the protection of the sick or infirm, as evidenced by the provision for inspection by the health officer and his agents of any institution established under the authority of the act. It is to be observed that no other intent is expressed in the act itself. Giving to the term the meaning indicated, we think it follows that the appellee institution is not within the term. The purpose of that institution appears to be the reformation of unfortunate girls. The child of any girl having one is admitted with its mother, and remains until the reformation or discharge of the mother, but that is a mere incident, the primary object being the reformation of the mother. Children are not born at the institution, and are not kept there except in connection with the sojourn of their mothers there. These mothers are not ill when they enter the institution nor are their children; in other words, it is a moral, and not a physical, improvement that is sought.

Appellant, however, insists that if not a hospital, the institution is an asylum. From what we have already said it is apparent, we think, that "asylum," as used in the act, was intended to denote and does denote an institution in the nature of a hospital. As generally used, the term signifies "an institution for receiving, maintaining, and, so far as possible, ameliorating the condition of persons suffering from bodily defects, mental maladies, or other misfortunes; as an orphan *asylum;* an *asylum* for the blind, for the insane, etc." Century Dictionary. "In its English acceptation the word is most commonly used to denote an establishment for the detention and cure of persons suffering from mental disease, and also a place for the reception and up-bringing of destitute orphans. Although the word might be loosely applied to a night refuge for the homeless, or to any similar institution, there does not seem to be any warrant for describing the Ulster Institute as a 'benevolent asylum.' Then the institute has no relation to the insane, and the benefits which it confers are not confined to the children of deceased parents. The fact that some of its inmates are to be orphans will not impart to the institution generally the character of an orphan asylum." *Dilworth* v. *Stamp Comrs.* (1899) 47 Week. Rep. 337. As previously suggested, the institution here under consideration can in no sense be said to be an orphan asylum, for orphans are not admitted thereto. Neither are children admitted, except as their mothers are admitted. The reception of the children, in other words, is a mere incident in carrying out the primary purpose of the institution, and, as held in *Dilworth* v. *Stamp Comrs.* the reception of the children, under these circumstances, does not impart to the institution generally the character of an asylum.

The further contention is made, however, that regardless of the applicability of said act of 1908 to the appellee institution it is, as conducted, a nuisance, and hence subject to the restraining hand of the court. From our brief review of the evidence, we think it apparent that appellant really objects to the character of this institution, more than to the manner in which it is conducted. Indeed, he was asked in cross-examination whether

he would object "to the simple fact of the institution being there,. object to the character of the institution, though the noises were not there," and answered: "Most decidedly, yes." His wife,. who testified in his behalf, was asked, "Then the objection you have to the place is more to the character of the institution than anything else," and answered, "Yes, that is it exactly." As a. hospital is not a nuisance *per se* (*Bessonies* v. *Indianapolis,* 71 Ind. 189), much less is this institution. Nor is it a nuisance as. conducted. "That is a nuisance which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him." *Baltimore & P. R. Co.* v. *Fifth Baptist Church,* 108 U. S. 317, 329, 27 L. ed. 739, 743, 2 Sup. Ct. Rep. 719. This, however, is a mere statement of a general principle, and, in the application of that principle, the degree of the annoyance must be considered, as well as the locality in which it occurs. "The question is   *   *   *. whether the nuisance complained of will, or does, produce such a condition of things as, in the judgment of reasonable men, is. naturally productive of physical discomfort to persons of ordinary sensibilities and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the complainant." *Akers* v. *Marsh,.* 19 App. D. C. 45. In that case, which was a suit by a husband and wife to enjoin certain parties from playing the game of croquet in a vacant lot adjoining complainants' dwelling after nightfall until, and sometimes after, 11 o'clock, light for the purpose being provided by small oil torches, the ground of the complaint being the noise incident to the playing of the game at night, it was held that there was nothing justifying the interference of the court by injunction. There is even less ground for complaint in the present case. The evidence of appellee, we think, sustains the averment in its answer that it conducts its. institution "with the utmost care and with a due regard to the comfort and welfare of those living in the neighborhood; * * *. that there are no noises save such as are usual and natural in homes where young people are assembled and where infants. are gathered." In view of the meagerness of the evidence of ap-

pellant upon this question, we do not deem it necessary to pursue the inquiry, contenting ourselves with the observation that it falls short of proving that the things complained of would be productive of physical discomfort to persons of ordinary sensibilities. The decree is affirmed, with costs.        *Affirmed.*