The City of Plymouth *v.* Schultheis.

Filed Nov. 8, 1893.

———————◆———————

No. 16,384.

THE CITY OF PLYMOUTH *v.* SCHULTHEIS.

MUNICIPAL CORPORATION.—*Ordinance.—Validity of.—Regulating Con-
duct, Business, and Use of Property.*—A municipal corporation seek-
ing, by ordinance, to place a restriction on the lawful use of prop-
erty, must specify in such ordinance the rules and conditions to be
observed in such business, and must permit the exercise of the
privilege to all citizens who will comply with the conditions, and
must not admit of the exercise, or of an opportunity of an exercise,
of any arbitrary discrimination by municipal authorities between
citizens so complying, otherwise the ordinance will be void.

From the Marshall Circuit Court.

*L. M. Lauer,* for appellant.

*C. Kellison,* for appellee.

HACKNEY, J.—The question for review in this case is
the validity of an ordinance of the city of Plymouth, the
violation of which is charged against the appellee. The
first section of the ordinance declared it to be unlawful,
within the limits, or within one mile of the limits, of
said city, to carry on the business of tallow chandleries,
soap factories, glue factories, slaughter houses, powder
magazines, tanneries or other hazardous or noxious trade
or business, or to erect, construct or repair any building
for any such purpose within such limits without first ob-
taining a permit or license therefor from the common
council of said city, as further provided.

By the second section, it was ordained that any person desiring to carry on any such business, or to construct or repair any building for any such uses, within the limits prescribed, should first apply, in writing, to the board of health of said city, describing particularly the proposed business and the location thereof, or the construction or repairs desired, and providing that if the board of health should find, upon examination, that the location or building proposed, and the business to be carried on, were not hazardous, hurtful, or noxious to the neighborhood in which they were proposed, and that they would in no way be detrimental to, or endanger, the public health or welfare of said city, said board could recommend the same to the common council; that thereupon the common council should cause a copy of said application to be published for two weeks, with a statement of the time when such application would be heard by the common council; that if, at the hearing, the common council should find the business not hurtful or noxious, and the location and use of the building not hazardous or hurtful to adjoining property-owners, a permit should be granted, under such restrictions as might be necessary to preserve the public health and welfare, and to protect the citizens from injury or annoyance therefrom. But if said board should report against granting the permit, by reason of its being detrimental to public health or welfare of the city, or hazardous or noxious to the neighborhood, the permit should not be granted, unless, upon the hearing, the common council should find otherwise.

Section three directed investigation of existing locations, buildings, and business, and report as to conditions affecting health and safety, by the board of health.

Section four prescribed the penalties for violations of section one, the fines not to exceed one hundred dollars,

and providing that upon a second conviction it should be a part of the judgment that the building wherein such business is conducted should be removed or demolished by the marshal, and the costs thereof taxed against the offender.

The business of the appellee, alleged to have been conducted in violation of this ordinance, was in conducting a tannery within the limits of said city.

It will be observed that the ordinance does not declare this business or its location to be a nuisance, nor does it declare any conditions under which it may be transacted, either as to the location, character of buildings, drainage, ventilation, or processes employed.

The manifest intention, in the passage of this ordinance, was not to regulate nor to prohibit tanneries, but to confer upon the board of health and the common council the undefined power of determining by whom, in what location and as to the character of the building in which such business might be conducted.

We need not consider the limits of power granted by the Legislature to cities for the preservation of the health and the property of the citizens.

If it be conceded that power existed to declare the tannery a nuisance and to provide for its summary abatement, or if it be conceded that such business is a nuisance *per se*, the power to permit such business by express license ought not and could not exist.

But if a business, by reason of its location, the character of the building in which it is conducted, or the manner in which it is conducted may become a nuisance, the most that could be claimed by the city would be the power to regulate or to abate such business.

Here it can be said, at most, that the business may become a nuisance. The effort is not to regulate the

business by prescribing the method of conducting it nor to abate it as a nuisance. The confiscation of the property, as provided by the ordinance, is not on account of the business having become a nuisance, but because its owner may have failed to secure a permit to conduct the business.

The evil affecting this ordinance is that it does not attempt to exercise the power claimed to vest in the city, namely: That of determining what may be injurious to health or to property, and of so providing for the welfare of the citizen as to regulate lawful business or to prevent that which is injurious. On the contrary, it attempts, without defined limits, to confer upon boards of health and common councils the power of determining to whom, and the place where, permits shall be granted to conduct tanneries. The principle here involved has been before this court on at least two other occasions, as will be seen from *Bessonies* v. *City of Indianapolis*, 71 Ind. 189, and *City of Richmond* v. *Dudley*, 129 Ind. 112.

In the first of these cases the city sought to require that hospitals should be conducted only upon permit, to be secured upon notice and application to the common council and board of aldermen.

It was said by this court: "It is apparent that, under the ordinance, if valid, the common council and board of aldermen have the power, to grant or refuse the license in any given case, at their mere pleasure; and that no one can conduct or maintain a hospital within the city, however harmless or beneficial it might be, except by the consent of the common council and board of aldermen."

It is further said in that case "that, if the ordinance is valid, the common council and board of aldermen have it in their power to grant one person a license, and re-

fuse another, under the same circumstances. No law could be valid, which, by its terms, would authorize the passage of such an ordinance.

"The 23d section of the bill of rights provides, that, the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens. What the Legislature can not do directly in this respect, it can not authorize a municipal corporation to do."

In the second of the cases cited, the city sought to require those keeping petroleum, naptha, etc., to apply to the common council for permission to store more than five barrels at any one time, describing in the application the location and character of the applicant's building, and the kind of vessels used in storing such oils. Here, as in the hospital case and in the case now before us, the character and extent to which the business should be permitted, and the condition and location of the property were impliedly reserved for the judgment, in each instance, of the common council.

After citing a number of authorities to the question, it was there said:

"It seems, from the foregoing authorities, to be well established that municipal ordinances placing restrictions upon lawful conduct, or the lawful use of property, must, in order to be valid, specify the rules and conditions to be observed in such conduct or business, and must admit of the exercise of the privilege by all citizens alike, who will comply with such rules and conditions, and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by municipal authorities, between citizens who will so comply."

We need not add to what is said in these two cases.

It is perfectly plain that we must affirm the judgment of the lower court in holding the ordinance void.

The judgment is affirmed.

Filed Nov. 2, 1893.