GEORGE C. INGHAM ET AL. *vs.* JAMES E. BROOKS ET ALS.

First Judicial District, Hartford, May Term, 1920.

WHEELER, BEACH, GAGER, CASE and CURTIS, Js.

The plaintiffs, owners in common of a right of fishery upon the north shore of Long Island Sound, claimed damages and injunctive relief for the defendants' alleged wrongful removal, in July, 1913, of a fish-house or shed used by the plaintiffs in connection with their fishery and brought by them within the borough limits early in 1913; and the principal issue upon this branch of the case was whether the shed stood "on the beach," as the plaintiffs averred, or was within the limits of a lawfully laid out highway in the borough, as the defendants asserted. The trial court found this issue for the defendants, and rendered judgment in their favor, and for the recovery by them of their expenses in removing the fish-house. *Held:*—

1. That inasmuch as it did not appear from the finding that the shed was located upon the beach, the plaintiffs had not sustained the burden of proof which rested upon them, and must therefore fail for that reason.
2. That upon the record the shed appeared to have been placed by the plaintiffs within the limits of the borough highway, from which it was lawfully removed by the agents of the borough.
3. That the owners of the fishery right were not entitled to notice of the layout of the highway in 1871, or to any compensation therefor, since the highway did not then come within eighty feet of the beach

at the point in question; and therefore evidence that one or more of the owners of the fishery right had not received notice of the layout and had not been paid any compensation, was properly excluded as immaterial.

4. That after the lapse of forty years or more the regularity of the proceedings affecting the layout would be presumed, in the absence of evidence to the contrary.

5. That evidence of a custom to use fish-houses upon the beach as an adjunct to the exercise of the right of fishery, was immaterial, as the deed under which the plaintiffs claimed carried with it such right.

6. That evidence to prove a discontinuance of the highway two years or more after the acts complained of by the plaintiffs, was manifestly immaterial.

A charter provision empowering the warden and burgesses of a borough to enact ordinances regulating the construction of buildings therein, and of additions to or alterations thereof, includes the power to prohibit by ordinance the removal of a building from outside the borough to a location within it.

Regulations of this character fall within the police power of government, to which all property is subject. They must, however, be reasonable, that is, must tend to accomplish the object of the power conferred, and must not conflict with constitutional or statutory provisions, National or State.

The defendants also attempted to justify their removal of the fish-shed upon the ground that the plaintiffs had not complied with an ordinance of the borough, passed in 1901, which prohibited the erection of any building of any description within the borough limits without a written permit of the borough warden; and further provided that such permit should not be granted unless a petition for leave to build had been previously presented to and approved by the board of warden and burgesses. *Held* that the ordinance in its present form was not a legitimate and reasonable exercise of the police power, inasmuch as it provided no standard by which the board was to be governed in granting or withholding its approval, but permitted it to act arbitrarily and at its own unfettered discretion; and furthermore, that it did not purport to direct or control the action of the warden in the course which he should pursue, but allowed him to grant or to refuse a permit at his own will, and for this reason was unconstitutional as not "due process of law."

Argued May 4th—decided August 5th, 1920.

ACTION to recover damages, and also to obtain equitable relief, for the alleged wrongful removal of, and

injury to, a fish-house and fishing paraphernalia owned by the plaintiffs within the Borough of Fenwick, brought to the Superior Court in Middlesex County where a demurrer to the second defense and to the defendants' counterclaim was sustained (*Burpee, J.*) and the cause was afterward tried to the court, *Reed, J.;* facts found and judgment rendered for the defendants upon all the issues except those raised by the fourth defense, and for the defendants to recover $107 on their amended counterclaim, from which the plaintiffs appealed. *No error.*

The defendants appealed from the ruling adjudging their second defense to be insufficient. *No error.*

William Lynde owned, at his decease in 1847, the Lynde Neck farm in the town of Old Saybrook, consisting of two hundred and fifty acres of upland, together with several fisheries or fish-places off the Long Island shore of this tract.

Among these fisheries or fish-places was the Gardner fish place, at a point within the borough of Fenwick and extending several thousand feet east of the land of D. C. Spencer on the shore of Long Island Sound, together with all the rights and privileges for the erection of fish-houses, reels and capstans for the purpose of taking and landing fish, and a convenient right of way across said farm with teams and carriages for fishing purposes to and from all of said fisheries and premises.

The use of the "fish place" during its existence has included the landing of boats, the erection and use of capstans, the hauling and drying of nets, the hauling up, sorting and packing of fish, and temporary abode during the fishing season for those engaged in the fishing.

Use of this fishery or fish place requires the use of the shore or beach, and of a portion of the beach above high-water mark.

The fee of this farm was distributed among the chil-

dren of William Lynde and through various grantors
to the borough of Fenwick, which was incorporated in
1899 and includes a part of the territory of what was
formerly the town of Old Saybrook.

In each of the several conveyances of the fee, the
several fisheries, including the Gardner fish place, were
excepted and reserved.

Upon the death of William Lynde the Gardner fish
place, through various wills and conveyances, became
vested in the plaintiffs, who at the time of bringing this
action owned undivided interests therein; and for
seventy years this "fish place" was held and used free
from the claim on the part of anybody else, by the plain-
tiffs and their predecessors in interest.

The owners of this fish place were not in fact damaged
by the layout of Beach Road; and no compensation by
way of damages was ever asked for or claimed from any-
body in 1871 when said highway was laid out, or at any
time since by any owners of the fish place in question.

In June, 1871, a highway known as Beach Road was
laid out, three and one half rods wide by the selectmen
of the town of Old Saybrook, and ever since this date,
up to the acts of trespass alleged in the complaint, this
highway has remained a legal highway in the public
records of the town as far as these plaintiffs are con-
cerned, unless the fact that no compensation was paid
and no notice was given the plaintiffs, as appears of
record, vitiates the legality of the layout.

There was no specific evidence introduced of any
compensation paid upon the layout of this highway,
and no evidence of any conveyances or dedication of
the land within the limits of the highway.

After the layout of Beach Road, a traveled roadway
of the width of from fifteen to twenty feet was there-
after actually worked and continuously used.

At the time the Beach Road was laid out in 1871,

the distance from its south line to the beach line at approximately the spot where the fish-shed in question was removed, was about eighty-four feet.

At the time the Beach Road was laid out as a highway, Rev. William Jarvis, D. C. Spencer, and The New Saybrook Company, were the only owners of land through which the highway was laid out. Since 1899 a part of the highway has been within the limits of the town of Old Saybrook, and a portion running along the beach of Long Island Sound has been within the limits of the borough of Fenwick.

Since 1871 the beach line opposite the said fish-shed has receded inland because of the action of the elements, and very much of the shore has been washed away, so that at the time of the acts in suit the beach line opposite the location of the fish-shed extended northward over the south line of the Beach Road and into and within its limits.

Acting under authority of its charter, the borough of Fenwick, on September 14th, 1901, passed the following ordinance:—

"Be it ordained by the Warden and Burgesses of the Borough of Fenwick.

"Section 1. No building of any description shall be erected within the limits of the Borough of Fenwick, or additions or alterations to any buildings already erected without a written permit granted by the Warden of the Borough.

"Section 2. A permit for the erection of a building or for an addition or alterations shall not be issued by the Warden unless a petition for leave to build, add to, or alter, has previously been presented to and approved by the Board of Warden and Burgesses. Such petition shall state the location of the proposed building, materials to be used in its construction, and the use for which it is to be occupied.

"Section 3. Violation of this ordinance shall be punished with a fine not exceeding one hundred dollars and any building erected contrary to the provisions of this ordinance may be removed or destroyed under the directions of the Warden of the Borough."

The plaintiff Ingham, before moving the fish-shed in question, knew of the ordinance and its terms. The borough officials duly warned Ingham against erecting this structure within the borough, without first securing a permit therefor. About January 1st, 1913, the plaintiff Ingham, without obtaining such permit and without any of the plaintiffs obtaining such a permit, moved a fish-shed which was used as a part of the Guard House Point Fishery, which was just west of the west line of the borough, to a point eight hundred rods easterly from the western limit of said borough to a point within the limits of the Beach Road and west of the east bound of the Gardner fish place. After its location the borough officials gave Ingham notice to remove the fish-shed within a reasonable time, and upon his failure so to remove, they removed the shed with reasonable care and without unnecessary damage, at a cost of $75.

In 1840 and thereafter there were several fisheries or fish places east of the Gardner fish place off the Long Island shore of this two hundred and fifty acre tract. For upward of forty years all of said fish places have been enjoyed and operated with one or two fish-sheds located on the Sound shore, and during all of this time there were no other buildings located, maintained or used in the operation of such fish places. From about 1890 to about 1903 there were no fish-sheds or any buildings whatever within the limits of Gardner fish place.

George Ingham had not operated the Gardner fish place within two or three years prior to 1913.

The plaintiff Frank Ingham, a son of George Ingham, operated the Gardner fish place in 1903 and thereafter, and has each year since 1913 applied for and obtained a permit from the State of Connecticut to set and maintain a pound and nets at Gardner fish place.

*George E. Beers* and *Ernest A. Inglis,* for the appellants (plaintiffs).

*Harry W. Reynolds,* with whom, on the brief, was *Lewis Sperry,* for the appellees (defendants).

WHEELER, J. The complaint alleges, as the basis of a recovery of damages and for injunctive relief, that the defendants on July 5th, 1913, removed and destroyed the plaintiffs' fish-shed and personal property from their fishery, Gardner fish place, in the borough of Fenwick, which they owned by undivided interests and upon which they were maintaining this shed and personal property in the operation of their fishery and under and in pursuance of their right so to do, and by reason of these acts the plaintiffs have ever since July 5th, 1913, been prevented from operating their fish place.

The defenses sustained by the judgment were the first and third.

The first defense is practically a general denial of plaintiffs' title, together with a justification for the removal of the shed and personal property from the Beach Road, a highway of the borough of Fenwick, within whose limits these had been placed, after notice to remove them given by the authorities of the borough.

The third defense alleges that this shed was placed by the plaintiffs within the limits of the Beach Road in Fenwick Borough, thus encroaching upon the highway and obstructing its use, and that the defendant officials

of the borough, pursuant to authority contained in its charter after due notice to plaintiffs, duly removed this fish-shed without doing unnecessary damage.

The plaintiffs denied the allegations of the third defense, and alleged that their right to erect the fish-shed as alleged in the complaint had never been taken for highway purposes, and that the Beach Road had never been legally laid out, since the plaintiffs had never been compensated for the taking nor received notice of the proceeding therefor. The defendants rejoined by pleading, specifically, acts indicating that the highway had been legally laid out.

So that the disputed issues upon the plaintiffs' appeal are: the title or right of the plaintiffs to locate and operate a fish place upon this part of the beach, and whether the locus upon which the plaintiffs had located the fish-shed was within the limits of a duly-laid-out highway known as the Beach Road.

As we read the finding it locates the Gardner fish place along the beach on the shore of Long Island Sound at a point within the borough of Fenwick extending several thousand feet along the beach from the land of Daniel C. Spencer on the west to a heap of stones some distance east of that part of the shore opposite the place where the plaintiffs set the fish-shed. The Gardner fish place was excepted and reserved in the various conveyances of the fee of the Lynde Neck farm; and the title to the Gardner fish place, by various wills and conveyances, became vested in the plaintiffs, who at the time of the bringing of the suit owned the title to this fish place in undivided interests.

In a later part of the finding the court finds that the reservation in the Pratt deed, followed in subsequent conveyances in this chain of title, referred to the Avery fish place and not the Gardner fish place. This appears to be inconsistent with the prior finding. But

the location of the Gardner fish place is so definite in the finding, and its title so unquestionably vested in the plaintiffs, that we cannot but understand this to be the conclusion of the trial court.

The finding nowhere locates the place where the fish-shed was placed as upon the beach or within the limits of the shore over which these plaintiffs have a right of fishery. For the north line of the beach as it existed in 1871 was upward of ninety feet from the place where this shed was placed. Whether the place where this shed was set up was in fact at that time upon the beach line, does not appear in the finding, and hence the plaintiffs have not sustained the burden of showing their right to maintain this shed upon the beach.

The third defense is also good. The fish-shed appears to have been placed within the limits of a highway of the borough, and was lawfully removed by the borough authorities. The finding shows that this highway, known as the Beach Road, was duly laid out three and one half rods wide by the selectmen of Old Saybrook through land of Rev. William Jarvis, D. C. Spencer, and The New Saybrook Company, unless the fact that neither notice of the proceedings nor compensation was given to the owners of this fishery renders the layout invalid. The existence of this highway was, by the statute in force at the time of its layout, conditioned on "satisfaction being made to the persons injured." Compensation to the persons injured is thus a necessary prerequisite to a valid layout. *New Haven* v. *New York, N. H. & H. R. Co.*, 72 Conn. 225, 44 Atl. 31. The owners of this fishery were not entitled to notice or compensation, for the finding is that the south line of the Beach Road was, at the beach line, approximately opposite the location of the fish-shed eighty-four feet from the beach. Only the owners of the land through

which the highway passed were entitled to notice or compensation, so far as this record shows. Clearly the owners of this fishery were not entitled to notice or compensation. No statute or charter required notice or compensation to be given the owners of this fishery. They had no constitutional right to these. "The plaintiff, whose land touched the proposed new highway at no point, was not entitled to a notice of the proceedings before this agency of the city in the matter of survey and layout, except as some statute, or the city charter may have prescribed it. He had no constitutional right to it." *Manners* v. *Waterbury*, 86 Conn. 573, 575, 86 Atl. 14.

The regularity of the proceedings affecting this lay-out—some forty-three years ago—will be presumed in the absence of evidence to the contrary. It will be presumed from the lapse of time, from the fact that the proceedings of lay-out were recorded and numerous recorded conveyances of lots bounded upon this highway have been made, that the acts requisite to make the layout a legal one have been taken. *Dawson* v. *Orange*, 78 Conn. 96, 61 Atl. 101; *New York, N. H. & H. R. Co.* v. *Armstrong*, 92 Conn. 349, 360, 102 Atl. 791; *Brownell* v. *Palmer*, 22 Conn. 107.

Three rulings on evidence are pressed, upon the appeal of plaintiffs. The evidence of Mrs. Lynde, one of the plaintiffs, as to whether she had received notice of the proceedings for a layout or been given compensation, would have been admissible had Mrs. Lynde had any interest in the land taken for the highway, or had her rights been affected by the layout. But so far as the record shows, she had no such interest and was not entitled to notice or compensation; hence the offer of proof was immaterial.

Evidence of the custom in the maintenance of buildings in the conduct of other fisheries was immaterial.

The right to the Gardner fishery carried with it all adjuncts reasonably necessary to the conduct of the business.

The evidence to establish a discontinuance of the highway two and one half years after the acts of which the plaintiffs complain, was so manifestly immaterial that no ground for the claim which needs consideration has been advanced. We find no merit in the plaintiffs' appeal.

The defendants' appeal is from the ruling sustaining the plaintiffs' demurrer to the second defense of defendants' answer. That defense relies upon an ordinance of the borough of Fenwick as authority for the action of the defendant officials in removing the fishshed. The provisions of the ordinance we have quoted in the statement of facts. They provide that no building, or additions or alterations to any buildings already erected, shall be erected in the borough of Fenwick without a written permit granted by the warden of the borough; and that a permit shall not be issued unless upon presentation of a petition stating the location of the building, the materials to be used and its proposed occupancy, to the board of warden and burgesses, and upon approval by them. The demurrer attacks the ordinance and the provision of the charter authorizing it, as contravening State and Federal constitutions in that they provide for the taking of the property of individuals without due process of law and without compensation. The decision of this point is of present interest to the borough of Fenwick and of large public importance, and for these reasons we pass upon it at this time. Other questions raised by the demurrer or advanced by the plaintiffs in their discussion of the demurrer upon this appeal, we do not pass upon, in view of our conclusion that the ordinance is, as claimed, unconstitutional.

The charter of the borough of Fenwick authorizes the warden and burgesses to make ordinances not contrary to the laws of this State and of the United States, for the following purposes: "to establish building lines and regulate the construction of buildings." These are, we think, two distinct and independent powers; the establishment of building lines and the construction of buildings are not dependent one upon the other. This provision of the charter, empowering the warden and the burgesses of the borough of Fenwick to enact an ordinance regulating the erection of, or additions to, or alterations of, any buildings in the borough, includes the power to prohibit by ordinance the removal of a building from one place to another, for this constitutes an erection of the building at this latter place as much as if it had then been built or put together from portable parts. Regulations of this character fall within the police power of government. "All property is held subject to this power." *Meriden* v. *West Meriden Cemetery Asso.*, 83 Conn. 204, 207, 76 Atl. 515. The police power of a State embraces regulations designed to promote the public health, the public morals, or the public safety, and also those designed to promote the public convenience or the general prosperity. *Chicago, B. & Q. Ry. Co.* v. *Drainage Commissioners*, 200 U. S. 561, 592, 26 Sup. Ct. 341. In short, whatever makes for the public welfare is within the police power of the State. That does not mean that this great power of government is without limitation. State and Federal Constitution are its certain limitations, and State and Federal statute may be its limitation. Municipal building regulations may be justified as promotive of the public safety, or the public health. And where these are not immediately affected as promotive of the public convenience or the public prosperity, whatsoever the regulation be, if it promote the public

welfare and meet the tests we have named and be within charter authority, it will be sustained.

Underlying each municipal regulation is the requirement that it be reasonable. It will be held to be reasonable provided it tend to accomplish the object conferred by the charter power, and be not in conflict with State or Federal Constitution, nor with State or Federal statute. *State* v. *Cederaski*, 80 Conn. 478, 480, 69 Atl. 19. When the municipal ordinance violates the fundamental law, or State or Federal statute, it is an instance of the unreasonable exercise of municipal authority, and must be declared invalid. A municipal prohibition against the erection of a wooden building within a certain settled section of a city, without securing a permit therefor, may be justified as a regulation in the interest of public safety, even though the conditions for the issuance of the permit be not stated and its issuance be left to the uncontrolled discretion of an official of the city. And this is so because the building within this district is calculated to endanger the public, and the business is of an urgent character and may not reasonably admit of being circumscribed by uniform conditions maintaining a common rule of action or standard. But where the business or act prohibited is not unlawful, or dangerous to the public health, safety or welfare, but is one which may be carried on without danger to the public welfare and one which may ordinarily be carried on, circumscribed by conditions common to all in that business, and conditions which may be determined by the municipal authorities, it is necessary that the ordinance of regulation should establish the conditions, and thus prescribe the rule of action or standard by which this business shall be conducted. *Pacific States Supply Co.* v. *City and County of San Francisco*, 171 Fed. Rep. 727, 731. If the ordinance, instead of prescribing the con-

ditions for carrying on the business or using one's property, leaves to some official the determination of whether this shall be carried on, and if so, how it shall be done, it restricts the right which everyone has over his own property by leaving it to the will of the official. The official may, upon the same facts, treat different citizens differently; to some he may grant permission, to others deny it, and that, too, of a business ordinarily perfectly lawful. And if the official is permitted to so decide, he exercises his discretion over a subject-matter for which a general, uniform rule may be made prescribing the conditions upon compliance with which each citizen may secure like treatment. A municipal regulation of this character is contrary to the Fourteenth Amendment, as well as to our own State Constitution.

*State* v. *Conlon*, 65 Conn. 478, 33 Atl. 519, determined that such a prohibition was contrary to Article First of our Constitution. The decision concerned an Act of the General Assembly prohibiting a person from engaging in any temporary or transient business for the sale of goods, without procuring a license, and authorizing the mayor of the city, the warden of the borough, or the selectmen of the town, to issue such license and to charge from $1 to $100 therefor. We held this Act to be a trade regulation, relating not to a business dangerous to the public, but to an ordinary and lawful business in which all citizens had an equal right to engage; and that the legal effect of the Act was to authorize the local officers of each municipality to grant exclusive privileges in the transaction of such lawful business to such persons as they pleased.

In *Yick Wo* v. *Hopkins*, 118 U. S. 356, 6 Sup. Ct. 1064, an ordinance of San Francisco prohibited the maintenance of a laundry "without having first obtained the consent of the board of supervisors, except the same

be located in a building constructed either of brick or stone." The State court "considered these ordinances as vesting in the board of supervisors a not unusual discretion in granting or withholding their assent to the use of wooden buildings as laundries, to be exercised in reference to the circumstances of each case, with a view to the protection of the public against the dangers of fire." But the Supreme Court of the United States said: "There is nothing in the ordinances which points to such a regulation of the business of keeping and conducting laundries. They seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons." The court held the ordinance in violation of the Fourteenth Amendment, because "it does not prescribe a rule and conditions for the regulation of the use of property for laundry purposes, to which all similarly situated may conform," but confers upon municipal authorities arbitrary discretion to give or withhold their consent without regard to the qualifications of the person or the suitability of the place, for the carrying on of a lawful business. These two opinions we regard as authoritative of the constitutional questions of which they treat.

There are a number of ordinances regulating buildings which have been passed upon by courts of last resort similar to that of the borough of Fenwick. In *State* v. *Tenant*, 110 N. Car. 609, 14 S. E. 387, the ordinance provided "that no person, firm or corporation shall build or erect within the limits of the city any house or building of any kind or character, or otherwise add to, build upon or generally improve or change any house or building, without having first applied to the aldermen and obtained a permission for such purpose."

The court held the ordinance void, because "it pre-scribed no general rule for the exercise of discretion in granting permits," but allowed the granting of a permit to one and the refusal to another, under precisely the same conditions, with no reason therefor but the irresponsible and arbitrary will of a majority of the aldermen. "It is equally clear, that if an ordinance is passed by a municipal corporation, which, upon its face, restricts the right of dominion which the individual might otherwise exercise without question, not according to any general or uniform rule, but so as to make the absolute enjoyment of his own depend upon the arbitrary will of the governing authorities of the town or city, it is unconstitutional and void, because it fails to furnish a uniform rule of action and leaves the right of property subject to the despotic will of aldermen who may exercise it so as to give exclusive profits or privileges to particular persons." In *Newton* v. *Belger*, 143 Mass. 598, 10 N. E. 464, the ordinance passed upon provided that no "person shall erect, alter, or rebuild, or essentially change, any building or any part thereof, for any purpose other than a dwelling-house, without first obtaining in writing a permit from the board of aldermen." Of this the court, by Morton, C. J., said: "The first section does not contain any regulations to guide the landowner in the construction or alteration of a building . . . other than a dwelling-house, in any part of the city, unless the landowner first obtains a written permit from the board of aldermen. It does not merely forbid the erection of any building which is hazardous, or which exposes other property or persons to danger. It does not require the board of aldermen to adjudicate and determine that it is necessary to prohibit any proposed building, for the purpose of securing the prevention of fire or the preservation of life. On the contrary, it gives them the

power, by refusing a permit, to prevent the erection of any building except a dwelling-house, for any reason which may be satisfactory to them. Under the ordinance, they may refuse a permit, because, in their opinion, it is desirable that certain parts of the city shall be used only for handsome dwelling-houses, and that all buildings for the purposes of trade shall be excluded, though in no sense dangerous. . . . For the reasons we have stated, we are of opinion that the first section is invalid." The ordinance under review in *City of Monticello* v. *Bates,* 169 Ky. 258, 183 S. W. 555, provided that no person should erect any building or structure of any kind without the permission of the board of trustees, and that no permit should be issued without the applicant filing plans and specifications for the building. The court held that the ordinance was a mere pretense at the exercise of the police power. "The rule," say the court, "is well established that municipal ordinances placing restrictions upon lawful conduct or the lawful use of property must, in order to be valid, specify the rules and conditions to be observed in such conduct or business; and must admit of the exercise of the privilege of all citizens alike who will comply with such rules and conditions; and must not admit of the exercise, or of an opportunity for the exercise, of any arbitrary discrimination by the municipal authorities between citizens who will so comply." In *City Council of Montgomery* v. *West,* 149 Ala. 311, 313, 42 So. 1000, the ordinance held invalid provided that "no person shall set up or operate a steam engine, a planing mill . . . without first obtaining the consent of the council." In *State* v. *Mahner,* 43 La. Ann. 496, 9 So. 480, the ordinance under review forbade the keeping of more than two cows without a permit from the city council. In declaring the ordinance invalid, the court said: "The ordinance is not general in its operation.

It does not affect all citizens alike who follow the same occupation which it attempts to regulate. . . . The discretion vested by the ordinance in the city council is in no way regulated or controlled. There are no conditions prescribed upon which the permit may be granted. It is within the power of the city council to grant the privilege to some, to deny it to others. The discretion vested in the council is purely arbitrary. . . . It may be controlled by partisan considerations and race prejudices, or by personal animosities. It lays down no rules by which its impartial execution can be secured, or partiality and oppression prevented." *Commonwealth* v. *House*, 177 Ky. 829, 831, 198 S. W. 218; *City of Sioux Falls* v. *Kirby*, 6 S. D. 62, 64, 71, 60 N. W. 156; *Bostock* v. *Sams*, 95 Md. 400, 52 Atl. 665; *Hagerstown* v. *Baltimore & O. R. Co.*, 107 Md. 178, 183, 68 Atl. 490; *Commonwealth* v. *Maletsky*, 203 Mass. 241, 89 N. E. 245; *Cicero Lumber Co.* v. *Cicero*, 176 Ill. 9, 26, 51 N. E. 758; *City of Plymouth* v. *Schultheis*, 135 Ind. 339, 35 N. E. 12; 19 R. C. L. p. 807, § 113, p. 813, § 118, p. 830, § 135.

A person desiring to erect a building in the borough of Fenwick must state in his petition certain facts, and secure the approval of his petition by the board of warden and burgesses. There is no standard by which the board is to be governed in its approval. There are no conditions to which the petitioner must conform. The board grants its approval or withholds it, at its discretion. When the board has approved, the warden may issue his permit. So far as the terms of the ordinance go, the action of the warden is neither controlled nor influenced by the approval of the board. The warden issues the permit or he withholds it: his course is governed by his own discretion. The ordinance obviously was not passed for the public safety, to prevent fires, or for the public health. The business

it regulates is a lawful one and one not inherently dangerous. It may be regulated following general rules and prescribing the conditions upon compliance with which a permit will issue. Instead of these, the warden issues the permit under only one condition: that the board of warden and burgesses have approved the petition. The approval made, the warden may then refuse the permit to one citizen and grant it to another upon precisely similar grounds. It may be issued or denied with or without reason. Subjecting property rights in a legitimate undertaking, and one not inherently dangerous, to the will of any official, and thus giving to him the opportunity for discriminatory ruling and arbitrary action, is not due process of law, and hence beyond the power of government. The ordinance in question was not, as the authorities we cite show, a legitimate exercise of the police power.

*Welch* v. *Hotchkiss*, 39 Conn. 140, and *Hine* v. *New Haven*, 40 Conn. 478, are, upon their face, ordinances in protection of the public safety, and hence the erection of buildings within the fire district may properly be made to depend upon the issuance of a permit, even though the ordinance be silent as to the conditions under which buildings may be erected.

*Fellows* v. *Charleston*, 62 W. Va. 665, 59 S. E. 623, holds a building ordinance valid which required a permit and that the person proposing to build should lay before the inspector of buildings plans and specifications, and secure his approval and that of the council from whom the permit was to be obtained. This decision is not in harmony with the authorities, and certainly is not supported by some of the authority it cites, for example, Smith on Municipal Corporations (Vol. 1) § 526. Further, the ordinance differs materially from the Fenwick ordinance.

The authority of the borough of Fenwick is ample to

pass any ordinance reasonably regulating the erection or removal of buildings within its limits; but it may not, under the guise of protecting the public interest, arbitrarily interfere with their erection or removal by making these dependent upon the uncontrolled discretion of the warden. Municipal regulations of this character must conform to some standard of action, and cannot be left to the uncontrolled will of any official. Individual rights may, under the police power, be restricted by some uniform rule of action, but never by the arbitrary will of the governing authorities. Upon this ground, at least, the demurrer was properly sustained.

There is no error on either appeal.

In this opinion the other judges concurred.