THE STATE OF CONNECTICUT *vs.* MCALLISTER COLEMAN.

Third Judicial District, New Haven, January Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

Under our Constitution, which is a grant and not a limitation of power, no powers were granted to the General Assembly, and none can be delegated by it to a municipality, which are inconsistent with the reservation of personal liberties contained in the Bill of Rights (Article First of the Constitution).

A city in the exercise of authority delegated to it by the legislature may make reasonable ordinances to keep the streets and parks open and safe for public travel and free from encroachment or obstruction; but it cannot constitutionally give to administrative officials an absolute and uncontrolled discretion to grant or refuse permission to do something which all citizens similarly situated have an equal right to do.

In the present case the common council of the city of Meriden had enacted an ordinance providing that no person should use the streets, sidewalks, parks, or public squares for the purposes of delivering

orations or making speeches or any other public demonstrations without first obtaining a permit from the chief of police, subject to a penalty. *Held* that the ordinance did not violate the 14th Amendment of the United States Constitution, since under that instrument legislation of this character was upheld by reading into it the presumption that a public officer would exercise his powers impartially and according to law; but that under our Constitutions and precedents such presumption assumes that the law will tell such official what his duties are, and as this ordinance gave the chief of police unlimited discretion to grant or withhold his license, it was invalid, as violating those sections of our Bill of Rights (1 and 5) which guarantee equality in rights and freedom of speech to all citizens. (*Two judges dissenting.*)

Whether the city might have unqualifiedly forbidden the delivery of any oration or the making of any speeches in such places, *quære.*

The constitutionality of a statute ought not to depend upon the way in which it is finally administered by those who are charged with its execution.

Where a public official is intrusted with discretion, his exercise thereof cannot be controlled by mandamus.

Argued January 20th—decided April 27th, 1921.

INFORMATION for using a public square in Meriden for the purpose of making a speech without having first obtained a permit from the chief of police of said city, brought to the Criminal Court of Common Pleas in New Haven County where a demurrer to the information was overruled and, upon the refusal of the accused to plead over, the court, *Simpson, J.*, sentenced him to pay a fine of $25 and the costs of prosecution, and from this judgment the accused appealed. *Error; judgment to be entered for defendant.*

*Albert De Silver* of New York City, and *Harry L. Edlin,* for the appellant (the accused).

*Edwin S. Pickett,* Prosecuting Attorney, for the appellee (the State).

BEACH, J. The charter of the city of Meriden empowers the court of common council to make and en-

force ordinances to keep open and safe for public use and travel, and free from encroachment or obstruction, the streets, highways, public grounds, and public places in the city; to prohibit or regulate shows, parades, rendezvous, and assemblies in streets and public places; to keep the streets and all public places quiet from undue noise, and to impose fines not exceeding $100 for violation of such ordinances. In the exercise of these powers the common council enacted the following ordinance:—

"Resolved—that no person or persons shall use the streets, sidewalk, parks or public squares for the purposes of delivering orations, or making speeches, or any other public demonstrations, without first obtaining a permit from the chief of police. Any person or corporation violating. . . . this ordinance shall, upon conviction thereof, be fined not more than $100."

The question raised by the defendant's appeal from the ruling of the court overruling the demurrer to the information, and from the sentence and judgment of the court, is whether this ordinance is violative of the Constitution of the State of Connecticut and of the United States.

Our Constitution is a grant and not a limitation of power. *Bridgeport Public Library & Reading Room* v. *Burroughs Home*, 85 Conn. 309, 319, 82 Atl. 582. It is certain that no powers were granted to the General Assembly, and that none can be delegated by it to a municipality, which are inconsistent with the reservation of personal liberties contained in Article First. The broad grant of the legislative power of the State to the General Assembly, in Article Third, is unqualified, and is not otherwise restrained than by Article First. It includes the police power, but that phrase does not denote any "peculiar and transcendent form of legislative authority." The police powers of a State " 'are

nothing more or less than the powers of government inherent in every sovereignty to the extent of its dominions' . . . If they are exercised by legislation which violates any right guaranteed by the National or State Constitution, they are so far forth invalid." *McKeon* v. *New York, N. H. & H. R. Co.*, 75 Conn. 343, 347 (53 Atl. 656), citing the *License Cases*, 46 U. S. (5 How.) 504, 583; *Leisy* v. *Hardin*, 135 U. S. 100, 108, 10 Sup. Ct. 681; *State* v. *Conlon*, 65 Conn. 478, 33 Atl. 519. See also *State* v. *Porter*, 94 Conn. 639 (110 Atl. 59) and cases cited.

The appellant's contention is that the Meriden ordinance is violative of §§ 1 and 5 of our Bill of Rights, which guarantee equality in rights and freedom of speech, and also of the Fourteenth Amendment to the Federal Constitution.

It does not appear whether the appellant has been deprived of the right of free speech or not. He has been fined for making a speech in a public park without a permit, but it does not follow that his speech was delivered at such a time or place that he had a constitutional right to deliver it. The ordinance purports to regulate the use of streets and parks, and it does not absolutely forbid, but by implication recognizes, some qualified right, or at least some qualified privilege, of public speaking at some time and under some restrictions in the streets and parks of Meriden. Such an ordinance is not necessarily violative of § 5 of the Bill of Rights; and, if it is, it can only be so because it attempts to confer on the chief of police the right to arbitrarily determine in advance who may exercise that qualified privilege, or what subjects may be publicly discussed, or what sentiments publicly expressed, on the streets and in the parks of Meriden.

This latter objection is based on § 1 of the Bill of Rights. If the qualified right or privilege of public

speaking which the ordinance recognizes is one which all citizens have an equal right to exercise, and if the true construction and effect of the ordinance be such as to confer on the chief of police a personal and arbitrary power to determine who may and who may not exercise it, then the ordinance is void, and its prohibition cannot be lawfully enforced by fine. *State* v. *Conlon,* 65 Conn. 478, 33 Atl. 519; *State* v. *Porter,* 94 Conn. 639, 110 Atl. 59; *Ingham* v. *Brooks,* 95 Conn. 317, 111 Atl. 209.

We take these two questions in order. The public right in streets and parks is paramount, and it is therefore admitted that in the exercise of its delegated authority the city of Meriden may make reasonable ordinances to keep the streets and parks open and safe for public travel and free from encroachment or obstruction. Whether it might have unqualifiedly forbidden the delivery of any oration or the making of any speech in such places we need not inquire, for it has not attempted to do so. A qualified right or privilege of public speaking, after obtaining a permit, is recognized, and the particular question is whether that residuum of right or privilege is of such a character that all citizens have a constitutional right to enjoy it upon equal terms. Section 5 of the Bill of Rights answers that question by declaring that "every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty." It is assumed by the ordinance that some citizens will be permitted by the chief of police to use the streets and parks of Meriden for the purpose of exercising their constitutional right. That being so, it is certain that the chief of police may not, by any arbitrary process of selection, determine in advance who may and who may not exercise it. If the permit is to be granted in some instances and withheld in

others, it must be in accordance with some uniform rule which is not expressed in the ordinance.

Turning, now, to the construction of the ordinance, to see whether such a uniform rule can be read into it, we find the ordinance hopelessly indefinite. It does not even expressly confer on the chief of police the power to issue permits. It simply assumes that he has the power to grant or refuse them. No rule is laid down to guide or restrain that power, or to inform applicants on what terms a permit will be granted.

In *People ex rel Lieberman* v. *Vandecarr*, 175 N. Y. 440, 67 N. E. 913, a section of the sanitary code of New York forbidding the sale of milk in New York City without a permit from the board of health, was upheld by reading into it the presumption that a public officer will exercise his powers impartially and according to law; and this decision was approved by the United States Supreme Court in *Lieberman* v. *Carr*, 199 U. S. 552, 26 Sup. Ct. 144. Assuming this to be the law of the United States Supreme Court, this ordinance does not violate the Fourteenth Amendment of the Federal Constitution.

But in determining whether it violates the Constitution of Connecticut, we must be guided by our own public policy and our own precedents. So guided, we can reach but one conclusion. In the first place, the presumption that a public officer will discharge his duties according to law assumes that the law tells him what his duties are. This ordinance does not do so. It must be supposed that a subordinate officer desirous of obeying the law will look to his written instructions for guidance, and, if the limitations on his authority are indefinite, that he will consider not only what is said, but, when the omission is significant, what is not said. There can be no reasonable presumption that an unlimited discretion will not be exercised when

the ordinance itself reposes an unlimited discretion.

As the Massachusetts court has said, in holding a similar grant of discretion unconstitutional: "Doubtless it is to be expected that a subordinate officer entrusted with unlimited power will use it wisely and with a view only to the public good; but, as in *Winthrop* v. *New England Chocolate Co.*, 180 Mass. 464, 466 [62 N. E. 969] there is nothing in the ordinance to guide him in passing upon the applications which may be made to him. . . . It is left entirely to his untrammelled discretion whether the business of keeping or sorting rags shall be carried on at all in Chelsea, or whether, if carried on, it shall be confined to persons of one nationality or of one way of thinking in religion or politics." *Commonwealth* v. *Maletsky*, 203 Mass. 241, 246, 82 N. E. 245. These last-quoted remarks apply with far greater force to the regulation of public speaking than they do to the regulation of the sorting of rags.

Even in the absence of Connecticut precedent, we should be unwilling to leave the constitutional liberties of a citizen to be defined and protected by the good impulses of a subordinate official entrusted with unlimited discretion; if for no other reason than that the exercise of discretion cannot be controlled by mandamus. *American Casualty Ins. Co.* v. *Fyler*, 60 Conn. 448, 22 Atl. 494; *State ex rel. Metropolitan Life Ins. Co.* v. *Upson*, 79 Conn. 154, 64 Atl. 2. Nor should the constitutionality of a statute be made to depend upon the way in which it is finally administered by those who are charged with its execution. *Cummings* v. *National Bank*, 101 U. S. 153, 161. The only effective way of protecting the citizen against the abuse of an unlimited discretion is to declare void any grant of an unlimited discretion to control the exercise of privileges which all citizens have a common right to enjoy on equal terms.

But the question is no longer an open one in this State. In *State* v. *Conlon*, 65 Conn. 478, 33 Atl. 519, the constitutionality of an itinerant vendor's Act was in issue, which authorized the local municipal authorities to license "such persons as they find proper persons to engage in a temporary or transient business," and forbade persons not so licensed to engage in such business. On careful consideration we held the Act violative of the first section of the Bill of Rights, saying (p. 488): "We can find no escape from the conclusion that the legal effect of the Act is to authorize the local officers of each municipality to grant exclusive privileges to such persons as they please in the transaction of a lawful business essential to the conduct of human affairs, and in which each citizen has an equal right to engage for the support of life."

The overwhelming weight of authorities in the State courts is that statutes and ordinances which purport to give to administrative officials an absolute and uncontrolled discretion to grant or refuse permission to do something which all citizens similarly situated have an equal right to do are unconstitutional. The following cases so hold: *State* v. *Porter*, 94 Conn. 639, 110 Atl. 59; *Ingham* v. *Brooks*, 95 Conn. 317, 111 Atl. 209; *Commonwealth* v. *Maletsky*, 203 Mass. 241, 89 N. E. 245; *People ex rel. Gamber* v. *Sholem*, 294 Ill. 204, 128 N. E. 377; *Cicero Lumber Co.* v. *Cicero*, 176 Ill. 9, 51 N. E. 758; *Sullivan* v. *Cloe*, 277 Ill. 56, 115 N. E. 135; *Sheldon* v. *Hoyne*, 261 Ill. 222, 103 N. E. 1021; *Bessonies* v. *Indianapolis*, 71 Ind. 189; *Richmond* v. *Dudley*, 129 Ind. 112, 28 N. E. 312; *Bills* v. *Goshen*, 117 Ind. 221, 20 N. E. 115; *Plymouth* v. *Schulthies*, 135 Ind. 339, 35 N. E. 12; *Anderson* v. *Wellington*, 40 Kan. 173, 19 Pac. 719; *Baltimore* v. *Radecke*, 49 Md. 217; *Matter of Frazee*, 63 Mich. 396, 30 N. W. 72; *Chicago* v. *Trotter*, 136 Ill. 430, 26 N. E. 359; *State ex rel. Garrabad* v. *Dering*, 84

Wis. 585, 54 N. W. 1104; *State* v. *Tenant,* 110 N. Car. 609, 14 S. E. 387; *State Center* v. *Barenstein,* 66 Iowa, 249, 23 N. W. 652; *Jacksonville* v. *Ledwith,* 26 Fla. 163, 7 So. 885; *Anderson* v. *Tedford* (Florida), 85 So. 673; *Welch* v. *Maryland Casualty Co.,* 47 Okl. 293, 147 Pac. 1046.

The ordinance in question is violative of §§ 1 and 5 of the Bill of Rights, and is void.

There is error, the judgment is set aside and the cause remanded with direction to the Court of Common Pleas in New Haven County to sustain the demurrer to the information and to enter judgment for the defendant.

In this opinion the other judges concurred, except GAGER and BURPEE, Js., who dissented.