V LLAGE OF GRANVILLE, Plaintiff, *v.* LOUIS E. KRAUSE, Defendant.

Supreme Court, Washington County, April 3, 1928.

Municipal corporations — zoning ordinances — action by village to enjoin erection of building — adoption of " Burnap plan " and building regulations invalid under Village Law, article 6-A, and § 89, subd. 30, and § 98 — provisions of Village Law, § 90-a, as to vote by aye and noe are mandatory — defects in building regulations and " Burnap plan " cannot be cured under Village Law, § 89, subd. 30 — plaintiff may not enjoin defendant's acts as public nuisance — complaint dismissed.

In an action by a village to enjoin the defendant from erecting a building it is alleged that the plaintiff has duly adopted the " Burnap plan " and has passed building regulations. The complaint further charges that defendant's erection of his intended building will constitute a public nuisance.

The adoption by the plaintiff of the " Burnap plan " and the building regulations is invalid under article 6-A of he Village Law (as added by Laws of 1923, chap. 564), and subdivision 30 of section 89 and section 90-a of the Village Law.

The " Burnap plan " is a mere nullity because of its indefiniteness, its visionary character, its total failure to district and divide as required by the statute as well as the insufficiency of the proof of a requisite enactment.

The " Burnap plan " being null and void renders ineffectual section 4 of the building regulations in which an attempt was made to vitalize said plan into a local statute. Moreover this section is void for the further reason that it prescribes no standard by compliance with which all similarly situated are assured of being treated alike.

The provisions of section 90-a of the Village Law that such building regulations shall be adopted by an aye and noe vote are mandatory and the failure to comply therewith renders the regulations null and void.

Moreover, sections 2 and 3 of the building regulations are null and void for the reason that they wholly fail to prescribe any fixed or certain standard applicable to the erection or alteration of buildings within the village.

There is no cure for the defects in the building regulations or the " Burnap plan " in the provisions of subdivision 30 of section 89 of the Village Law, since the subject-matter here sought to be enjoined is not within the purview of the said statute.

Even though plaintiff's allegation that defendant's contemplated action will constitute a public nuisance be true, it would manifestly not authorize the plaintiff to enjoin the defendant, since the nuisance complained of is not such as may be enjoined by the suit of a municipality. Furthermore, there is no evidence to substantiate the charge of nuisance.

Accordingly, defendant's motion for a judgment dismissing the complaint on the merits is granted.

MOTION by defendant to dismiss complaint in action to enjoin erection of building within corporate limits.

*Milford D. Whedon,* for the plaintiff.

*Wyman S. Bascom,* for the defendant.

BREWSTER, J. The plaintiff, a municipal corporation, sues to enjoin defendant in his intended erection of a building for business purposes upon a lot of land owned by him within its corporate limits. The gravamen of the complaint is to the effect that upwards of five years ago the plaintiff " duly adopted a well considered plan, known as the Burnap plan, which plan, among other things, was for the purpose of regulating and restricting trades, industries and business places and location of buildings designed for such specified purposes," and, generally, that said plan set forth the location of places in said village for trade, industry and business as well as those to be used exclusively for residential purposes; that on June 2, 1924, the plaintiff duly passed an ordinance which " prohibited the construction  *  *  *  of any building in the village  *  *  *  without a permit of the board of trustees;" that said plan since its adoption and said ordinance since its passage have been in full force and effect; that defendant's property upon which he intends building is within a location " specified in said Burnap plan to be used exclusively for residences;" that in December, 1927, defendant applied to plaintiff's board of trustees for a permit to erect his building on his said lot and that " after due deliberation and careful consideration " said board refused to grant same and that defendant " has secured no right or authority " to erect his contemplated building. The complaint further charges that defendant's erection of his intended building will diminish the value of all property in its vicinity, increase the fire hazard and fire insurance rates and constitute a public nuisance. An injunction *pendente lite* has been granted.

To establish its cause of action, plaintiff made the following proof: That, as appears by certain minutes recorded in the plaintiff's official records, at a regular monthly meeting of its board of trustees, held July 3, 1922, " The Community Association sent " a certain committee, apparently to plaintiff's board of trustees, " to present plans for future development of village," after which recital the minutes state further: " Mr. Webster made motion to lay this plan on the table until members have a chance to study it, motion lost. Mr. Williams made motion that this plan be adopted and seconded by Mr. Roche, carried," it further appearing that the said Webster and Roche were two of plaintiff's trustees in attendance at the meeting. Then followed testimony of the present village clerk who, however, was not such on July 3, 1922, to the effect that the plan referred to in the aforesaid minutes is known as " G. B. Burnap's plan," and there was received in evidence a map or drawing which the clerk testified constituted

48

the said Burnap plan, and it is conceded that aside from the minutes just referred to, said map or drawing constitutes the only evidence of the existence of said Burnap plan with the possible exception of subsequent references thereto in the minutes of later board meetings and the further exception of the action of the plaintiff's board of trustees on June 2, 1924. On this latter date the minutes recorded in plaintiff's official records disclose that at a regular monthly meeting of the village board one of the trustees "made motion to adopt village ordinances on building regulations as read," which motion was seconded and carried and was followed by another carried motion that "said building regulations be published and noticed as required by statute." There was then received in evidence a copy of the so-called "building regulations" together with proof of a two weeks' publication of same in the local paper and that copies thereof were posted in four public places in the village. The matter thus published and posted constitutes the alleged ordinances purported to have been adopted "as read" at the June 2, 1924, meeting. It is headed "Building Regulations" and, in the proof of publication and posting, is so styled, and the only other evidence of their enactment or constitution or status as a local statute is contained in the aforesaid minute recital to the effect that a motion was made and carried to "adopt village ordinances on building regulations as read." So far as material to this suit, these building regulations, or these ordinances if such be the status, provide:

"Section 2. No building to be erected without permit.

"No structure or building shall hereafter be erected, built, set up or placed within the limits of the village, and no work, except necessary repairs, shall be done upon any structure or building in said village, until the plans and specifications, thereof, so far as they indicate the location of said structure or building, the material of which it is to be built, the height and strength of the walls thereof, and its relative situation with reference to the street and to the adjoining estate, shall have been approved by the board of trustees and without a permit from said board, nor except in conformity with the provisions of this chapter.

"Section 3. No building to be erected or altered without obtaining grade of street.

"Every person before proceeding to erect any building or to make any alteration in any external or party wall of any building, or to lay the foundation thereof, shall first apply to the board of trustees for the lines and grade of the street, square or public place upon which he intends to build; and the board of trustees shall furnish the same without cost, if in their power so to do.

No permit shall be issued for the erection of any building unless the person intending to erect the same shall have consulted the board of trustees in regard to the grade of the street or public way on which such building is to be erected, and obtained a certificate to that effect from the board of trustees.

### " BURNAP PLAN

" Section 4. If in the judgment of any member of the board, any plans and application for permit, submitted at a meeting of the board, conflict with the Burnap plan, or if objection to granting such permit is filed, in writing, by two taxpayers upon the ground that such conflict is claimed, permit shall not be granted until after an opportunity for public hearing.

" The consideration of the matter shall be set for a later date, and reasonable notice published once in the Granville *Sentinel*, showing the location and nature of the proposed structure, and appointing date of trustees meeting, when the public and persons interested may be heard and the matter determined."

Seeking to enjoin defendant from the performance of an act alleged to be *malum prohibitum*, it is elementary that, for plaintiff to succeed, the legality of the prohibition must be established. Concededly, the prohibition alleged has no sanction by virtue of the provisions of article VI-A of the Village Law (as added by Laws of 1923, chap. 564), since there is no evidence that any of the procedural provisions essential to an exercise of the zoning powers there conferred were followed, and, in fact, this addition to the statute had not been enacted at the time of the adoption of the so-called Burnap plan although it was in effect when the so-called building regulations were passed. The legality of the prohibition in question must, therefore, be tested by the sanctions of section 89, subdivision 30 (as added by Laws of 1921, chap. 464), and section 90-a of the Village Law (added by Laws of 1910, chap. 202, as amd. by Laws of 1916, chap. 397) as those provisions stood when the plaintiff's board of trustees took the action above reviewed.

Coming now to the so-called Burnap plan, it is found to be a map or drawing prepared by one of that new profession of city planners. It is indorsed by its authors as a " Preliminary Plan for the Extension and Development of Granville, N. Y." It purports to have been drawn to a scale and, in truth, delineates the purported corporate area of the plaintiff in all the " glory that was to be." It maps out streets and avenues that have never been dedicated, laid out or established and which are in fact non-existent and, mythically, varies, adds to and extends

many public ways which are a reality. It depicts the extensive area of an imaginary lake which it makes bold to call " Lake Mettowee,' and, along its southerly shores, an island bandstand, the broad reaches of an exhibition park and a spacious bathing beach, all composed of the stuff of which dreams are made. It envisages, as in the future to be, three new school sites and six or more variously termed, or named not at all, parks, playgrounds, community garden, athletic field, circus and fair grounds, all non-existent in fact, while along the village's southwesterly bounds, or in that vicinity, appears the bold tracery of an intricate rosette approximately six hundred feet in diameter and of nameless representation and mysterious purpose so far as concerns any of the plaintiff's proof. While there is nothing on the map or in the evidence referable thereto showing for a reasonable certainty the location of plaintiff's corporate limits, there does appear in the extreme southeasterly section a space labeled " Industrial Section," but even as to that the boundaries are seemingly ambiguous and indefinite as regards any reasonable certainty. No pretense is made of bounding the locations designed exclusively for residential purposes unless we are to infer that the unlabeled areas mean to designate that, and, whether by the drawing of the group of buildings in the extreme northeasterly portion styled " Civic Center " was meant to locate such an institution there or merely to there project the elevations of what was to be located elsewhere, does not appear, but it is patent that the buildings thus shown were indeed " castles in the air." It is this map or drawing of an utopian Granville that plaintiff has proven and upon which it relies as establishing its well-considered plan alleged in the complaint and as constituting the foundation for a subsequent alleged ordinance, styled building regulations, which it here seeks to invoke to prevent the defendant from doing what, aside from that, is lawful and laudable. I am waiving a consideration of the grave informality of the proceedings of plaintiff's board of trustees in their action in adopting this plan, and, considering only what was done and not how it was accomplished, I am obliged to hold that the Burnap plan, so called, which was thus brought forth was and is a mere nullity in so far as constituting the well-considered plan for restricting the location of business properties which is authorized by section 89, subdivision 30, of the Village Law, on account of its indefiniteness, its visionary character, its total failure to district and divide as required by the statute, as well as the insufficiency of the proof of a requisite enactment.

Coming now to the building regulations passed on June 2, 1924, section 4 thereof must fail as lawful regulations because of my conclusion

as above stated. The Burnap plan being null and void renders ineffectual this attempt by section 4 of the building regulations to vitalize it into a local statute and vitiates the same. Moreover, in my opinion, this section is void for the further reason that it prescribed no standard by compliance with which all similarly situated are assured of being treated alike. (43 C. J. 257; *Welch* v. *City of Niagara Falls,* 210 App. Div. 170, 176; *Yick Wo* v. *Hopkins,* 118 U. S. 356.)

As to the remainder of the above-quoted building regulations, I am also of the opinion that they are wholly void and, therefore, ineffectual to bind the defendant. The only authority I can find that furnishes a claim for their valid existence is section 90-a of the Village Law. While these regulations were adopted, if at all, in a manner of gross informality, they having been " adopted as read," and there is conspicuous lack of suitable words of enactment, still, waiving these apparent defects, it is to be noted that they were not adopted by an aye and noe vote as expressly required by the statute. The village board of trustees, being a creature of the statute, has no inherent power (*Matter of South Market Street,* 76 Hun, 85, 89), and the statute in question, being a delegation of power and of a power which, when exercised, is in plain derogation of the common law, requires a strict construction. (*Village of Stamford* v. *Fisher,* 140 N. Y. 187, 191.) The Legislature expressly dictated the manner in which the vote of the board of trustees was to be taken upon a question of the exercise of this delegated power. This was rather out of the ordinary and there must have been some compelling reason therefor. Cogent reasons at once suggest themselves. Accordingly I hold that this statutory requirement as to the manner of voting is not merely directory but mandatory, and, it not having been shown that this requirement was complied with, there is a fatal lack of proof as to the validity of the passage. Moreover, I hold that sections 2 and 3 of these building regulations are void for the further reason that they wholly fail to prescribe any fixed or certain standard applicable to the erection or alteration of buildings within the village. This is essential. (*Ingham* v. *Brooks,* 95 Conn. 317, 329.) There being no fixed rule or standard applicable to all alike, the reasonableness of the requirement cannot be tested and the result is that the whole matter is thus left to the uncurbed will of whoever may constitute the corporate board and those officials empowered to treat different citizens differently on the same facts, thus rendering the regulations void for arbitrariness and unreasonableness. (*People ex rel. Wineburgh Adv. Co.* v. *Murphy,* 195 N. Y. 126, 135; *Ingham* v. *Brooks, supra; City of Monticello* v. *Bates,* 169 Ky. 258, 266; *Yick Wo* v. *Hopkins, supra.*)

I can find no cure for the defects pointed out in these so-called building regulations or in the Burnap plan in the provisions of subdivision 30 of section 89 of the Village Law since the subject-matter here sought to be enjoined is not within the purview of the latter statute.

As to the plaintiff's complaint that defendant's contemplated action will constitute a public nuisance, even though this were true and proven it would manifestly not authorize the plaintiff to enjoin it since the nuisance referred to is not of the kind that may be enjoined at the suit of a municipality. (*City of Yonkers* v. *Federal Sugar Refining Co.,* 136 App. Div. 701; affd., 207 N. Y. 724.) Furthermore plaintiff's proof, in my judgment, is barren of any evidence to substantiate the complaint's charge of nuisance.

Therefore, for the reasons assigned, defendant's motion for a judgment dismissing the complaint on the merits, made at the close of plaintiff's case and renewed at the close of all the evidence, is granted, with costs.

Decreed accordingly.